**JUDGE DANIELS**

BARBARA HOFFMAN (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200 (phone)

7 CIV 7755

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| BARBARA BROUGHEL<br><br>          Plaintiff,<br><br>v.<br><br>THE BATTERY CONSERVANCY,<br>AND WARRIE PRICE<br><br>          Defendants. | COMPLAINT<br>JURY TRIAL DEMANDED |

Plaintiff Barbara Broughel, by her attorney, the Hoffman Law Firm, for her Complaint against Defendants alleges as follows:

### NATURE OF ACTION

1. This is an action for copyright infringement under the Copyright Act 17 U.S.C. § 101 et seq., and ancillary state law causes of action *inter alia*, breach of contract, tortious interference with economic advantage and prospective contract and quantum meriut brought by noted visual artist, Barbara Broughel (the "Artist" or "Plaintiff"). The Artist was awarded a commission based on a proposal which included designs for carousel figures, floor, lighting, cinematic elements, sounds and enclosures. The Artist claims that The Battery Conservancy (the "Conservancy") and Warrie Price, the President (collectively, the "Defendants"), wrongfully terminated the Project with the intention of

1

excluding the Artist from completing the commission she had been awarded, and misappropriating, without payment, the Artist's copyrighted designs, other intellectual property and services, and have, on information and belief, so used the Artist's intellectual property and services without payment, her authorization or payment to her.

## THE PARTIES

2. Plaintiff is an artist residing and domiciled in the State of Connecticut. Plaintiff is a distinguished and respected sculptor whose work has been exhibited for over 25 years throughout the United States, Europe and beyond. She is represented by Barbara Krakow Gallery in Boston, and by Frederieke Taylor Gallery in New York and regularly produces gallery exhibitions as well as commissioned works, including a recent project for The Queens Museum of Art. The Artist has been the recipient of numerous highly competitive awards, including Fulbright, Asian Cultural Council and Bunting Fellowships, and has been an artist-in-residence at many prestigious institutions, including Harvard University. She holds degrees from SUNY and The University of California, with additional academic training from The Hartford Art School, The Whitney Museum Independent Study Program and The Institute for Semiotics and Structural Studies, Toronto. The Artist has taught at several well known institutions including, MIT from 1994-2000, UNC Chapel Hill and Wesleyan University.

3. Upon information and belief, the Conservancy was created in 1994 as a 501(c)(3) not-for-profit educational corporation to rebuild and revitalize the Battery and Castle Clinton National Monument, the park's major landmark in New York City. The Conservancy spearheads the improvement efforts in partnerships on city, state and federal levels, and with its private donors.

4. Upon information and belief, Defendant Warrie Price is the founder of the Conservancy, serves as Battery Conservancy President, and as the City's Battery Administrator and the State's Harbor Park Director. She is sued in both her official and individual capacity herein.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of the claims set forth hereunder pursuant to federal diversity jurisdiction under Article III, Section 2 and Article I, Section 9 of the United States Constitution, and under 28 U.S.C. § 1332, as the matter of controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff, a citizen of Connecticut, and the Defendants, who are all citizens of the State of New York. This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, 1338(a) and (b), and 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over each of the Defendants under the doctrines of general jurisdiction, based on their offices located in this state, and the actions of Defendants in this State, or failures to act, leading to the filing of this Complaint.

7. Venue in this district is properly predicated on both 28 U.S.C. 1391(a)(1), in that each of the Defendants is situated within this judicial district, and pursuant to 28 U.S.C. 1391(a)(2), in that the subject matter of this action arose in this judicial district.

## FACTUAL ALLEGATIONS

8. On or about January 3, 2004, the Conservancy issued a Call to Artists to submit proposals for a carousel interior in Battery Park with an aquatic theme (the "RFP") for a new carousel to be built.

9. In early 2004, five (5) artists, including Plaintiff, were selected as finalists to produce proposals with maquettes. The Conservancy encouraged finalists to submit concepts for the carousel interior and enclosure as a whole (not just figures) (the "Carousel"), and indicated, contrary to their RFP, that the budget was, at that date, open-ended with respect to fabrication costs and artist fees to be the subject of further negotiations.

10. On or about April 2004, the Plaintiff was selected by a duly constituted committee independent of the Conservancy, and awarded the commission based on her proposal which included designs for carousel figures, floor, lighting, cinematic elements, sound and enclosure (the "Project").

11. Between April 2004 and March 2007, the Conservancy requested the Artist to perform numerous uncontracted tasks to promote the Project and contribute to fundraising efforts.

12. In 2004, the Conservancy and Warrie Price also requested that Artist supply a model, and 28 water color paintings for Carousel and Project fundraising. Instead, these were used to raise money for the Conservancy's operating costs and salaries. Although the Artist invoices the Conservancy $28,818, as per agreed-upon terms for the work performed, only $5,000 was paid.

13. On or about January 20, 2006, the Artist entered into a Phase 1 contract ("Phase 1 Contract") with the architects Weisz + Yoes (hereinafter "Architects") to perform the following:

- collaborate w/design team to develop interior design elements of the carousel
- produce an overall plan for the carousel figures
- produce a design for individual carousel figures (species selection)

- produce a scale model of the carousel and figures (in collaboration with the fabricator)
- Produce a prototype of one figure at full scale (in collaboration with the fabricator)

14. The Artist provided all services as required for Phase 1 in a timely manner, and eventually was paid for her contract Phase I services but not for Phase 1 costs, disbursements and other extra services not included with the scope of Phase 1 but requested by the Defendants with the mutual understanding that the Artist would be compensated for the extra services, costs and disbursements.

15. Despite the terms of the Phase 1 Contract which required the Artist to work with the fabricator and entitled the Artist the right to supervise and approve the prototype to give effect to her aesthetic vision, Warrie Price and the Architects, in part on information and belief, for expediency, in part for motives not entirely obvious, prevented the Artist's input. The result was a $75,000 debacle.

16. Warrie Price invited the Artist to a meeting in which she apologized to the Artist and avowed she had made a terrible mistake in not honoring the Artist's contractual role as part of the design process.

17. At that same meeting, Price agreed that she would adhere to the RFP terms and conditions, including entering into an agreement, as required by the RFP, directly between The Battery Conservancy and the Artist. The Artist agreed to assemble a new team to produce a second prototype, and accepted that all future agreements would be between the Conservancy and the Artist.

18. From April 2004, the Artist produced designs and presentations which assisted in securing approval for the Project by various City, Parks Department,

Community Board and Arts Commissions of the City of New York. The Artist developed a number of design concepts for the Project.

19. The understanding of the Artist and the Conservancy was that the Artist would produce designs of individual figures and figure details based on ride typology/code requirements/budget to be determined at the end of Phase 1 and negotiated in a Phase 2 agreement.

20. On or about January 17, 2006 and again on April 3, 2006, the Artist presented to the Conservancy an outline of Phase 2 tasks, timeline and budget, as well as an invoice for payment of $20,000 due for the Phase 1 Contract.

21. On or about April 28, 2006, the Conservancy agreed to pay the Artist $20,000 for past due work completed on the Phase 1 Contract, but only on the condition that the Artist agree to sign over all intellectual property rights to her designs. In the summer, the Conservancy repeated its offers to pay the Artist for past due invoices, but only in exchange for assignment of her intellectual property rights to the Project to the Conservancy. The Artist rejected the offer since all services had been provided in accordance with the terms and conditions of the Phase 1 Contract which permitted the Artist to retain all intellectual property rights and the Conservancy offered the Artist no additional compensation for surrender of her rights.

22. On or about July 12, the Defendants agreed in the future to contract with the Artist directly (not through the architect or any other 3rd party). The Artist again presented to the Conservancy an outline of Phase 2 tasks ("Phase 2 Contract"), timeline and budget, in anticipation of the agreed to negotiation of the Phase 2 Contract. The Conservancy and

the Artist outlined the scope of services in the immediate future and the Conservancy requested that the Artist direct the production of a new second full-scale prototype as a "tax-deductible, pro-bono contribution" in order to permit the Project to move forward and in exchange for the Conservancy fully funding the production of the prototype and the reimbursing of all of the Artist's out-of-pocket costs.

23. From July 2006 to January 2007, with the approval of the Defendants, the Artist worked on the development and fabrication of new models, skin samples, chandelier elements and a second prototype.

24. On or about December 27, 2006, the Defendants stopped the fabrication of the second prototype days before production.

25. On or about March 15, 2007, the Conservancy sent the Artist a letter thanking her for $20,000 of pro-bono work she has performed between July and December 2006, and providing Plaintiff with a letter for tax deduction purposes although such tax deduction would not have been permitted by the IRS.

26. On or about March 21, 2007, the Conservancy sent the Artist a letter arbitrarily and without justification terminating the prototype agreement of July 12, 2006.

27. On or about April 12, 2007, the Conservancy sent a letter to Plaintiff terminating her from the Project on the newly minted subterfuge that she had not performed services as required. In fact, Warrie Price in substance and effect, had previously stated to the Artist on March 5, 2007 that she wanted to complete the Project without the Artist and that she wanted to do other things before she retired in four or five years without spending the time working with an Artist. On information and belief, Artist was terminated to enable Defendants to use Artist's intellectual property, including her

copyrighted designs, without permitting her to complete the Project in conformance with her artistic vision as approved by the selection committee and without further payment to her.

## CLAIM I

### COPYRIGHT INFRINGEMENT

28. Plaintiff repeats and alleges 1-27 of this Complaint.

29. Artist is the "author" of all designs of the Project under 17 U.S.C. et seq.

30. Artist has complied with all formalities of the Copyright Act and has applied for copyright registration. A copy of the registration certificate is attached hereto as Exhibit A.

31. Defendants' reproduction of Plaintiff's designs including the creation of derivative works without her authorization constitutes an infringement of copyright.

32. Plaintiff is entitled to an injunction and damages and reasonable attorney's fees for willful copyright infringement.

## CLAIM II

### BREACH OF CONTRACT

33. Plaintiff repeats and realleges 1-27 of this Complaint.

34. Plaintiff has fully performed her obligations to the Defendants as required by the RFP and further agreements excepts as Defendants have prevented such performance.

35. Defendants have breached their obligations to Plaintiff (i) by preventing her from supervising the fabrication of the prototype for consistency with her aesthetic

judgment, and (ii) failure to meet their contractual obligations, including payments made to the Artist for agreed to expenditures and extra services and for obstructing the completion of the Project which she had been commissioned to create by failure to negotiate in good faith subsequent phases of the Project as required by the RFP.

36. As a direct and foreseeable consequence of Defendants' actions Artist has suffered injury to reputation, lost profits, lost commissions, unreimbursed expenses in an amount to be determined at trial, but no less than $200,000.

## CLAIM III

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

37. Plaintiff repeats and realleges 1-27 of this Complaint.

38. The RFP and the Phase 1 Contract implicitly included a covenant of good faith and fair dealing.

39. Defendant Price and the Conservancy breached the implied covenant of good faith and fair dealing by *inter alia*, preventing Artist's involvement in the fabrication of the first prototype and failing to negotiate subsequent phases of the Project as required by the RFP.

40. As a result of Defendant's breach, Artist has been prevented without justification, from the realization of her artistic vision as approved by the selection committee in accordance with the RFP, and has suffered monetary damages, injury to reputation and emotional distress.

## CLAIM IV

## QUANTUM MERUIT

41. Plaintiff repeats and realleges paragraphs 1-27 of this Complaint.

42. Plaintiff provided valuable services for the benefit of Defendants outside of any contractual obligations.

43. Plaintiff has not been compensated for her services and Defendants have benefited unjustly.

44. Plaintiff's hourly rate for services of this kind is $175.00 an hour.

45. Plaintiff is owed an amount to be proved at trial but no less than $175,000.

## CLAIM V

## PROMISSORY ESTOPPEL

46. Artist repeats and realleges paragraphs 1-27 of this Complaint.

47. Artist reasonably relied on the fact that Price's demands for pro-bono services would be in furtherance of the Project and that she would be retained to complete it.

48. Artist relied on the promise of completing the Project in contributing in excess of $20,000 of labor to the Project.

49. Price is estopped from the arbitrary and capricious terminating of Artist's participation in the Project because she is tired and wants to work on other projects before she retires.

50. Price's actions were motivated by self-interest, malice and willful disregard of the Conservancy's obligations and Price's obligations to the Artist and to the City of New York.

## CLAIM VI

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND PRE-CONTRACTUAL RELATIONS

51. Artist repeats and realleges paragraphs 1-27 of this Complaint.

52. Artist had a business relationship with the Conservancy based on the award of the commission under the RFP and understood and relied upon the award to change her position and to take steps to create and develop the winning competition design.

53. Defendant Price knew that the Artist was selected as the Artist member of the Design Team to execute her Project and influence and collaborate on the larger Carousel project.

54. Defendant Price knew of the terms of the RFP and intentionally interfered with the Artist's execution of the Project.

55. Defendant Price acted with malice, and used dishonest, unfair and improper means.

56. Defendant Price's interference caused injury to Artist's relationship with the Conservancy and prevented the completion of the Project, resulting in significant harm to the Artist's reputation, and damages.

## CLAIM VII

### COMMERCIAL INTERFERENCE WITH CONTRACTS AGAINST DEFENDANT PRICE

57. Artist repeats and realleges paragraphs 1-27 of this Complaint.

58. Artist had a valid contract to complete Phase 1 with the Architects, of which Defendant Price was aware.

59. Defendant Price, in her individual capacity, intentionally procured the breach of contract, or prospective contract, without justification.

60. Defendant Price by her actions prevented the completion of a successful prototype as required by Phase 1.

61. As a result of Defendant Price's actions, Artist has been prevented from completing the Project, causing damage not only to her reputation as an Artist but depriving the people of New York of an important artistic addition to the lower Manhattan environment.

## CLAIM VIII

## INJUNCTION

62. Artist repeats and realleges paragraphs 1-27 of this Complaint.

63. Plaintiff is likely to succeed on the merits and will suffer irreparable harm if a temporary restraining order and permanent injunction do not issue to prevent Defendants from completing the Project and Carousel without Plaintiff.

WHEREFORE, the Plaintiff respectfully requests that the Court:

(i) Enjoin Defendants from completing the Project without Plaintiff.

(ii) Enjoin the use of Plaintiff's copyrighted designs.

(iii) Award Plaintiff compensatory damages in an amount to be proved a trial but no less than $400,000 for injury to reputation, lost profits, payment owed for services rendered and reasonable expenses, emotional distress and punitive damages in an amount to be determined at trial.

(iv)   Award Plaintiff reasonable attorney's fees.

(v)    Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 30, 2007

Respectfully submitted,

By: _____
Barbara Hoffman, Esq. (BH8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200

*Attorney for Plaintiff Barbara Broughel*

EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Short Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**VAu 737 – 068**

VA  VAU

Effective Date of Registration

3  22  07

Application Received
MAR 2 2 2007

Deposit Received
MAR 2 2 2007  Two

Examined By: [signature]

Correspondence ☐

Fee Received

---

**TYPE OR PRINT IN BLACK INK. DO NOT WRITE ABOVE THIS LINE.**

**1. Title of This Work:** SEA GLASS GROUP

Alternative title or title of larger work in which this work was published:

**2. Name and Address of Author and Owner of the Copyright:** BARBARA BROUGHEL
160 HILLSPOINT ROAD
WESTPORT, CT 06880

Nationality or domicile:
Phone, fax, and email:
Phone ( 212 ) 353-3770    Fax ( 203 ) 682-4556
Email broughel@earthlink.net

**3. Year of Creation:** '04 – '06

**4. If work has been published, Date and Nation of Publication:**
a. Date ____ Month ____ Day ____ Year ____ (Month, day, and year all required)
b. Nation ____

**5. Type of Authorship in This Work:** Check all that this author created.
☑ 3-Dimensional sculpture   ☐ Photograph   ☐ Map
☐ 2-Dimensional artwork     ☐ Jewelry design  ☐ Text
☐ Technical drawing

**6. Signature:** I certify that the statements made by me in this application are correct to the best of my knowledge.* Check one:
☑ Author   ☐ Authorized agent
x *Barbara Broughel*

Registration cannot be completed without a signature.

**7. Name and Address of Person to Contact for Rights and Permissions:**
☑ Check here if same as #2 above.
Phone ( )    Fax ( )
Email

**8. Certificate will be mailed in window envelope to this address:**
Name ▼ BARBARA BROUGHEL
Number/Street/Apt ▼ 160 HILLSPOINT ROAD
City/State/ZIP ▼ WESTPORT, CT 06880

**9.** Deposit Account # ____
Name ____

DO NOT WRITE HERE    Page 1 of ____ pages

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Sea Glass
Day/Night Studies










Sea Glass group
lighted Trigger Fish

Sea Glass group

measurements (1/12th scale)



Sea Glass group

