BARBARA HOFFMAN (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200 (phone)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| BARBARA BROUGHEL<br><br>    Plaintiff,<br><br>    v.<br><br>THE BATTERY CONSERVANCY, WARRIE PRICE, CLAIRE WEIZ AND MARK YOES, "DBA" WEISZ + YOES<br><br>    Defendants. | 07cv7755<br><br>**FIRST AMENDED COMPLAINT** |

    Plaintiff Barbara Broughel, by her attorney, the Hoffman Law Firm, for her First Amended Complaint against Defendants alleges as follows:

### NATURE OF ACTION

    1. This is an action for copyright infringement under the Copyright Act 17 U.S.C. § 101 et seq. (the "Copyright Act"), and ancillary state law causes of action *inter alia*, breach of contract, tortious interference with economic advantage and prospective contract, quantum meriut and the New York Artists Authorship Rights Act (NY CLS Art & Cultur Aff § 14.03 (2007) brought by noted visual artist, Barbara Broughel (the "Artist", "Plaintiff Broughel"). The Artist was awarded a commission based on a proposal which included original and novel designs for carousel figures, floor, lighting, cinematic elements, sounds and enclosures (the "Project"). The Artist claims that The Battery Conservancy

(the "Conservancy ") and Warrie Price, the President (collectively, the "Conservancy Defendants"), wrongfully terminated the Project with the intention of preventing the Artist from completing the commission she had been awarded, and misappropriating, without payment, the Artist's copyrighted designs, other intellectual property and services, and have, on information and belief, so used the Artist's intellectual property and services without payment to her or her authorization. Plaintiff Broughel also alleges claims against Claire Weisz + Mark Yoes, "dba" Weisz + Yoes (collectively referred to as "Defendant Architects"), including copyright infringement and state law claims *inter alia*, breach of contract, and the New York Artist's Authorship Rights Act. In what is becoming, unfortunately, a familiar story, Defendant Architects misappropriated the Artist's copyrighted designs and concepts. Unwilling to share the credit, , the Defendant Architects succeeded in removing the Artist from the Project without cause, for their own personal gain and ambition.

## THE PARTIES

2.  Plaintiff Broughel is an artist residing and domiciled in the State of Connecticut. Plaintiff Broughel is a distinguished and respected sculptor whose work has been exhibited for over 25 years throughout the United States, Europe and beyond. She is represented by Barbara Krakow Gallery in Boston, and by Frederieke Taylor Gallery in New York and regularly produces gallery exhibitions as well as commissioned works, including a recent project for The Queens Museum of Art, New York. The Artist has been the recipient of numerous highly competitive awards and residencies, including a Fulbright, Asian Cultural Council and Bunting Fellowships, and artist-in-residence at Harvard University. She holds degrees from SUNY and The University of California, with

additional academic training from The Hartford Art School, The Whitney Museum Independent Study Program and The Institute for Semiotics and Structural Studies, Toronto. The Artist has taught at several well known institutions including, MIT from 1994-2000, UNC Chapel Hill and Wesleyan University.

3. Upon information and belief, the Defendant Conservancy was created in 1994 as a 501(c)(3) not-for-profit educational corporation to rebuild and revitalize the Battery and Castle Clinton National Monument, the park's major landmark in New York City. The Conservancy spearheads the improvement efforts in partnerships on city, state and federal levels, and with its private donors.

4. Upon information and belief, Defendant Warrie Price is the founder of the Conservancy, serves as Battery Conservancy President, and as the City's Battery Administrator and the State's Harbor Park Director. She is sued in both her official and individual capacity herein.

5. Defendant Claire Weisz is a partner in, upon information and belief, the architectural firm "dba" Weisz +Yoes.

6. Upon information and belief, Mark Yoes is a partner in the architectural firm "dba" Weisz + Yoes. The firm is located in New York City and its corporate structure is unknown to Plaintiff Broughel.

## JURISDICTION AND VENUE

7. This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, 1338(a) and (b).

8. This Court also has jurisdiction over the subject matter of the claims set forth hereunder pursuant to federal diversity jurisdiction under 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff, a citizen of Connecticut, and the Defendants, who are all citizens of the State of New York.

9. This Court has personal jurisdiction over each of the Defendants by virtue of their transacting, doing and soliciting business in this District, and because a substantial part of the related events occurred in this District and the subject matter of this litigation is in this District.

10. Venue in this district is properly predicated on both 28 U.S.C. 1391(a)(1), in that each of the Defendants is situated within this judicial district, and pursuant to 28 U.S.C. 1391(a)(2), in that the subject matter of this action arose in this judicial district.

## FACTUAL ALLEGATIONS RELEVANT TO ALL DEFENDANTS

11. On or about January 3, 2004, the Defendant Conservancy issued a Call to Artists to submit proposals for a carousel interior in Battery Park with an aquatic theme (the "RFP") for a new carousel to be built.

> **Contracting**: the selected artist (or team) will contract with the Battery Conservancy. The carousel will be owned by the City of New York therefore the deigns approval must follow the standard process that includes reviews by the City of New York Department of Parks & Recreation, Community Board 1, and the Art Commission.

**Gala Presentation**: The Conservancy intends to unveil the project and boost the fundraising campaign at the June 7 Gala, which will have an aquarium there. Creating one life-size figure is part of this plan, which will involve the selected artist's immediate participation.

**Design Development and Final Design**: It is anticipated that the selected artist will adapt and adjust the design based on comments by the Advisory Committee and the Conservancy. The artist will also be part of the design team for the carousel and will contribute to the plans for the entire carousel. The design will also comply with specifications provided by the carousel fabricator.

**Fabrication and Installation**: The carousel fabricator will be responsible to build and install the carousel. The artist and architect will advise on the fabrication, review test samples and the fabrication progress.

12.  In early 2004, five (5) artists, including Plaintiff Broughel, were selected as finalists to produce proposals with maquettes. The Defendant Conservancy encouraged finalists to submit concepts for the carousel interior and enclosure as a whole (not just figures) (the "Carousel Project"), and stated to all the finalists that, contrary to the RFP, the budget was, at that date, open-ended with respect to fabrication costs and artist fees which would be the subject of further negotiations.

13.  On or about April 2004, Plaintiff Broughel was selected by a duly constituted committee independent of the Defendant Conservancy, and awarded the commission based on her proposal which included original and novel designs for carousel figures, floor, lighting, cinematic elements, sound and enclosure (the "Project").

14. Defendant Architects were the Carousel Project Architects. On information and belief they were from the inception of the Carousel Project opposed to putting an artist on the design team and believed they could do the Carousel Project without an artist team member.

15. Between April 2004 and March 2007, the Defendant Conservancy requested the Artist to perform numerous tasks to promote the Project and to contribute to fundraising efforts, which tasks exceeded any contractual obligation .

16. In 2004, the Defendant Conservancy and the Defendant Warrie Price requested that the Artist supply a model, and 28 water color paintings ("Artist's Extra Work") for Project fundraising. Plaintiff Broughel prepared a model to 1/10 scale to the marine life figures that will be cast in translucent resin and lit with fiber optics in an animated interior environment of projected light and sound. Instead, contrary to the Plaintiff Broughel's understanding, the Artist's Extra Work was used to raise money for the Defendant Conservancy's operating costs and salaries. Although the Plaintiff Broughel invoiced the Defendant Conservancy $28,818, as per agreed-upon terms for the Artist's Extra Work, only $5,000 was paid to Plaintiff Broughel.

17. On or about January 20, 2006, the Plaintiff Broughel was obliged by the Defendant Conservancy, despite the RFP, to enter into a Phase 1 contract ("Phase 1 Contract") with the Defendant Architects to perform the following:

- collaborate w/design team to develop interior design elements of the carousel
- produce an overall plan for the carousel figures
- produce a design for individual carousel figures (species selection)
- produce a scale model of the carousel and figures (in collaboration with the fabricator)
- Produce a prototype of one figure at full scale (in collaboration with the fabricator)

18. Plaintiff Broughel provided all services as required for Phase 1 in a timely manner, and eventually was paid for her contract Phase I services but not for Phase 1 costs, disbursements and other extra services not required within the scope of Phase 1 but requested by the Defendants with the mutual understanding that Plaintiff Broughel would be compensated for the extra services, costs and disbursements.

19. Despite the terms of the Phase 1 Contract which required that Plaintiff Broughel work with the fabricator and granted to Plaintiff Broughel the right to supervise and approve the prototype to give effect to her aesthetic vision, Defendant Warrie Price and the Defendant Architects, in part on information and belief, for expediency, in part for motives not entirely obvious, prevented the Artist's input. The result was a $75,000 debacle.

20. Defendant Price invited Plaintiff Broughel Artist to a meeting in which she apologized to the Plaintiff Broughel and avowed she had made a terrible mistake in not honoring the Artist's contractual role as a member of the design team.

21. At that same meeting, Defendant Warrie Price agreed that she would adhere to the RFP terms and conditions, including entering into an agreement, as required by the RFP, directly between The Battery Conservancy and the Artist. Plaintiff Broughel agreed to assemble a new team to produce a second prototype, on condition that all future contracts would be between, as required by the RFP, the Defendant Conservancy and Plaintiff Broughel.

22. From April 2004, Plaintiff Broughel produced designs and presentations which assisted in securing approval for the Project by various City, Parks Department,

Community Board and Arts Commissions of the City of New York. She developed a number of design concepts for the Project.

23. The understanding of the Plaintiff Broughel and the Defendant Conservancy was that she would produce designs of individual figures and figure details based on ride typology/code requirements/budget to be determined at the end of Phase 1 and negotiated in a Phase 2 agreement.

24. On or about January 17, 2006 and again on April 3, 2006, the Plaintiff Broughel presented to the Defendant Conservancy an outline of Phase 2 tasks, timeline and budget, as well as an invoice for payment of $20,000 due and owing to her for services performed under the Phase 1 Contract.

25. On or about April 28, 2006, the Defendant Conservancy agreed to pay the Artist $20,000 for past due work completed on the Phase 1 Contract, but only on the condition that Plaintiff Broughel agree to sign over all intellectual property rights to her designs. In the summer, 2006, the Defendant Conservancy repeated its offers to pay the Artist for past due invoices, but only in exchange for assignment of her intellectual property rights to the Project to the Defendant Conservancy. Plaintiff Broughel rejected the offer since all services had been provided in accordance with the terms and conditions of the Phase 1 Contract which permitted the Artist to retain all intellectual property rights and the Defendant Conservancy offered the Artist no additional compensation for surrender of her rights.

26. On or about July 12, 2006, the Defendant Conservancy and Defendant Price agreed to contract with the Plaintiff Broughel directly (not through the architect or any other 3rd party) in future phases. Plaintiff Broughel again presented to the Defendant Conservancy an

outline of Phase 2 tasks ("Phase 2 Contract"), timeline and budget, in anticipation of the agreed to negotiation of the Phase 2 Contract. The Defendant Conservancy and the Plaintiff Broughel agreed to the scope of services in the immediate future and the Defendant Conservancy requested that the Plaintiff Broughel direct the production of a new second full-scale prototype as a "tax-deductible, pro-bono contribution" in order to permit the Project to move forward and in exchange for the Defendant Conservancy fully funding the production of the prototype and the reimbursing of all of the Plaintiff Broughel's out-of-pocket costs.

27.   From July 2006 to January 2007, with the approval of the Defendants, the Artist worked on the development and fabrication of new models, skin samples, chandelier elements and a second prototype.

28.   On or about December 27, 2006, the Defendants stopped the fabrication of the second prototype days before production.

29.   On or about March 15, 2007, the Defendant Conservancy sent the Artist a letter thanking her for the $20,000 of pro-bono work she had performed between July and December 2006, and provided Plaintiff Broughel with a letter for tax deduction purposes. Plaintiff Broughel never requested such a letter, which she knew would not have been permitted by the IRS. This pro-bono service was unrelated to another $20,000 payment invoiced for services previously performed by Plaintiff Broughel.

30.   On or about March 21, 2007, the Defendant Conservancy sent the Plaintiff Broughel a letter arbitrarily and without justification terminating the prototype agreement of July 12, 2006.

31.   On or about April 12, 2007, the Defendant Conservancy sent a letter to Plaintiff Broughel terminating her from the Project on the newly minted subterfuge that

she had not performed services as required. In fact, Defendant Warrie Price in substance and effect, had previously stated to the Artist on March 5, 2007 that she wanted to complete the Project without the Plaintiff Broughel and that she wanted to do other things before she retired in four or five years without spending the time working with an artist.

32. On information and belief, Plaintiff Broughel was terminated to enable Defendants to use Artist's intellectual property, including her copyrighted designs, without permitting her to complete the Project in conformance with her artistic vision as approved by the selection committee and without further payment to her.

33. Defendants Price and the Conservancy and Defendant Architects have removed Plaintiff Broughel's name from any and all credits related to the Project and deleted her name from the official Carousel website and the Weisz + Yoes website. (Exhibit A)

34. Defendants have reproduced, transmitted and displayed images of Plaintiff Broughel's copyrighted artwork on their respective websites without authorization or credit.

CLAIM I

COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS

35. Plaintiff Broughel repeats and alleges paragraphs 1-34 of this First Amended Complaint.

36. Plaintiff Broughel is the "author" and copyright holder of all designs of the Project under 17 U.S.C. 101 et seq.

37. Artist has complied with all formalities of the Copyright Act and has registered and applied for copyright registration. A copy of the registration certificate and accompanying images are attached hereto as Exhibit B.

38. Defendants' conduct violates the exclusive rights belonging to Plaintiff Broughel as owner of the copyrights in the artworks of the Project including without limitation Plaintiff Broughel's rights under 17 U.S.C. § 106. Examples of the infringing uses from Defendants' website are attached as Exhibit C.

39. On information and belief, Plaintiff Broughel alleges that as a direct and proximate result of their wrongful conduct, Defendants have realized and continued to realize profits and other benefits belonging to Plaintiff Broughel and accordingly, Plaintiff Broughel seeks an award of damages pursuant to 17 U.S.C. § 504 and 505.

40. Defendants' infringing conduct has also caused and is causing substantial and irreparable injury and damage to Plaintiff Broughel in an amount not capable of determination and unless restrained will cause further irreparable injury, leaving Plaintiff with no adequate remedy at law.

41. On information and belief, Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, and malice, and in conscious disregard of the rights of Plaintiff Broughel. Plaintiff Broughel is, therefore, entitled to the maximum statutory damages allowable.

42. As a consequence of this dispute between the parties as to the rights, title, and interest in the copyrighted Project described above, and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Plaintiffs Broughel also seek a

resolution of this ongoing controversy by a declaration of this Court as to the rights of the respective parties in this matter.

## CLAIM II

### BREACH OF CONTRACT AGAINST ALL DEFENDANTS

43.  Plaintiff repeats and realleges paragraphs 1-34 of this First Amended Complaint.

44.  Plaintiff has fully performed her obligations to the Defendants as required by the RFP and further agreements excepts as Defendants have prevented such performance.

45.  Defendants have breached their obligations to Plaintiff (i) by preventing her from supervising the fabrication of the prototype for consistency with her aesthetic judgment, (ii) by failure to meet their contractual obligations, including making payments to the Plaintiff Broughel for agreed to expenditures and extra services, and (iii) by obstructing the completion of the Project which she had been commissioned to create *inter alia*, as regards Defendant Conservancy and Warrie Price by failure to negotiate in good faith subsequent phases of the Project as required by the RFP.

46.  As the proximate cause and as a direct and foreseeable consequence of Defendants' actions Artist has suffered injury to reputation, lost profits, lost commissions, unreimbursed expenses in an amount to be determined at trial, but no less than $200,000.

## CLAIM III

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS

47. Plaintiff repeats and realleges paragraphs 1-34 of this First Amended Complaint.

48. The RFP and the Phase 1 Contract implicitly included a covenant of good faith and fair dealing.

49. Defendants breached the implied covenant of good faith and fair dealing *inter alia*, by preventing Plaintiff Broughel's involvement in the fabrication of the first prototype, and participation on the design team by failing to negotiate or preventing the negotiation of subsequent phases of the Project as required by the RFP and ousting her from the Project without cause other than for their own personal gain.

50. As a result of Defendants' breach, Plaintiff Broughel has been prevented without justification, from the realization of her artistic vision as approved by the selection committee in accordance with the RFP, and has suffered monetary damages, injury to reputation and emotional distress.

## CLAIM IV

### QUANTUM MERUIT AGAINST ALL DEFENDANTS

51. Plaintiff Broughel repeats and realleges paragraphs 1-34 of this First Amended Complaint.

52. Plaintiff Broughel provided valuable services for the benefit of Defendants outside of any contractual obligations in reliance on her continued involvement with the Project.

53. Plaintiff Broughel has not been compensated for her services and Defendants have benefited unjustly.

54. Defendant Architect has wrongfully misappropriated the concepts, themes and structures of Plaintiff Broughel for their own use, credit and benefit.

55. Plaintiff Broughel's hourly rate for services of this kind is $175.00 an hour.

56. Plaintiff Broughel is owed an amount to be proved at trial but no less than $175,000.

## CLAIM V

### PROMISSORY ESTOPPEL AGAINST DEFENDANTS CONSERVANCY AND WARRIE PRICE

57. Plaintiff Broughel repeats and realleges paragraphs 1-34 of this First Amended Complaint.

58. Plaintiff Broughel reasonably relied on the fact that Price's demands for pro-bono services would be in furtherance of the Project and she agreed to provide such service only on condition of her continued participation in the Project.

59. Plaintiff Broughel relied on the promise that she would complete the Project if she contributed "pro bono work". Plaintiff Broughel contributed $20,000 in pro bono services in reliance on future contracts.

60. Defendants Conservancy and Price are estopped from the arbitrary and capricious termination of Plaintiff Broughel in the Project because Defendant Warrie Price "is too tired to work with an artist and wants to work on other projects before she retires."

61. Defendant Price's actions were motivated by self-interest, malice and willful disregard of the Defendant Conservancy's obligations and Defendant Price's obligations to the Artist and to the City of New York.

## CLAIM VI

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND PRE-CONTRACTUAL RELATIONS AGAINST DEFENDANT PRICE AND DEFENDANT ARCHITECTS

62. Plaintiff Broughel repeats and realleges paragraphs 1-34 of this First Amended Complaint.

63. Plaintiff Broughel had a business relationship with the Defendant Conservancy based on the award of the commission under the RFP and understood and relied upon the award to change her position and to take steps to create and develop the winning competition designs.

64. Defendants Price and Defendant Architects knew that the Artist was selected as the only artist member of the Design Team to execute her Project and influence and collaborate on the larger Carousel project.

65. Defendants Price and Defendant Architects knew of the terms of the RFP and intentionally interfered with the Artist's execution of the Project.

66. Defendants Price and Defendant Architects acted with malice, and used dishonest, unfair and improper means for their own personal gain.

67. Defendants Price's and Defendant Architects' interference caused injury to Artist's relationship with the Defendant Conservancy and prevented the completion of the Project, which actions and interferences were the proximate cause of significant harm to the Plaintiff Broughel's artistic reputation, caused of her severe emotional harm and monetary damages.

## CLAIM VII

### COMMERCIAL INTERFERENCE WITH CONTRACTS AGAINST DEFENDANT PRICE AND DEFENDANT ARCHITECTS

68. Plaintiff Broughel repeats and realleges paragraphs 1-34 of this First Amended Complaint.

69. Plaintiff Broughel had a valid contract to complete Phase 1 with the Defendant Architects, of which Defendant Price was aware.

70. Defendant Price, in her individual capacity, intentionally procured the breach of contract, or prospective contract, without justification.

71. Defendant Price by her actions prevented the completion of a successful prototype as required by Phase 1.

72. As a result of Defendant Price's actions, Plaintiff Broughel has been prevented from completing the Project, causing damage not only to her reputation as an Artist but depriving the people of New York of an important artistic addition to the lower Manhattan environment.

## CLAIM VIII

### IMMORAL TRADE PRACTICES AND MISAPPROPRIATION OF IDEAS AGAINST ALL DEFENDANTS

73. Plaintiff Broughel repeats and realleges paragraphs 1-34 of this First Amended Complaint.

74. Plaintiff Broughel submitted her novel and original ideas to the Defendants with the implicit and explicit understanding that Defendants would not use her novel and original ideas without contracting with her to complete the Project.

75. Defendants have used without her permission or authorization her novel and original ideas without credit or monetary compensation and deprived her of the right to complete a significant Project with justification.

## COUNT X

### NEW YORK ARTIST'S AUTHORSHIP RIGHTS ACT
### AGAINST ALL DEFENDANTS

76. Plaintiff Broughel repeats and realleges paragraphs 1-34 of this First Amended Complaint.

77. Sec. 14.03 2(a) of the New York Artist's Authorship Rights Act provides in pertinent part: Except as limited by subdivision three of this section, the artists shall retain at all times the right to claim authorship, or, for just and valid reason, to disclaim authorship of such work. The right to claim authorship shall include the right of the artist to have his or her name appear on or in connection with such work as the artist. The right to disclaim authorship shall include the right of the artist to prevent his or her name from appearing on or in connection with such work as the artist. Just and valid reason for disclaiming authorship shall include that the work has been altered, defaced, mutilated or modified other than by the artist, without the artist's consent, and damages to the artist's reputation is reasonable likely to result or has resulted therefrom.

78. Defendants have misappropriated Plaintiff Broughel's ideas and wrongfully excluded her from the Carousel Project in breach of her intellectual property rights.

79. Defendants have misappropriated Plaintiff Broughel's copyrighted designs, by *inter-alia* displaying them on their websites without credit to Plaintiff Broughel.

80. The display of Plaintiff Broughel's fine art without credit violates the Sec. 14.03.2(a) entitling Plaintiff Broughel to damages and injunctive relief.

## INJUNCTION

81. Artist repeats and realleges paragraphs 1-34 of this First Amended Complaint.

82. Plaintiff is likely to succeed on the merits and will suffer irreparable harm if a temporary restraining order and permanent injunction do not issue to prevent Defendants from completing the Project and Carousel without Plaintiff.

WHEREFORE, the Plaintiff respectfully requests that the Court:

(i) Declare that Defendants' unauthorized conduct violates 17 U.S.C. 101 et seq and ancillary state law rights.

(ii) Enjoin Defendants from completing the Project without Plaintiff.

(iii) Enjoin the use by Defendants' of Plaintiff's copyrighted designs and Plaintiff's original and novel ideas..

(iv) Award Plaintiff Broughel compensatory damages in an amount to be proved a trial but no less than $400,000 for injury to reputation, lost profits, payment owed for services rendered and reasonable expenses, emotional distress and punitive damages in an amount to be determined at trial.

(v) Declare that Plaintiff Broughel has the right to complete the Project as provided for in the RFP.

(vi) Award Plaintiff Broughel actual and/or statutory damages in an amount to be determined at trial.

(v)  Award Plaintiff Broughel her costs, reasonable attorney's fees and disbursements in this action pursuant to 17 U.S.C § 505, and

(vi)  Award Plaintiff Broughel such other and further relief as is just and proper.

Dated: New York, New York
       November 19, 2007

Respectfully submitted,

By: _____
Barbara Hoffman, Esq. (BH8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York  10023
(212) 873-6200

*Attorney for Plaintiff Barbara Broughel*