Margaret K. Pfeiffer (MP4552)
Rita M. Carrier (RC3847)
Susan K. Nash (SN1123)
1701 Pennsylvania Ave., N.W.
Washington, D.C.  20006
Tel.:  (202) 956-7500
Fax:  (202) 293-6330

*Attorneys for Defendants/Counterclaimants*
The Battery Conservancy & Warrie Price

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————x
                            :

BARBARA BROUGHEL,          :

                           :

           Plaintiff,      :     No. 07 Civ. 7755 (GBD)

                           :

           v.          :     ECF Case

                           :

THE BATTERY CONSERVANCY,    :
WARRIE PRICE, CLAIRE WEISZ, AND  :
MARK YOES, "DBA" WEISZ + YOES,  :

                           :

          Defendants.    :
———————————————————x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

Page

**STATEMENT OF THE FACTS** ....................................................................................1

**ARGUMENT** ................................................................................................................5

**I.   LEGAL STANDARD.** ........................................................................................5

**II.  NONE OF THE NINE CLAIMS OF THE AMENDED COMPLAINT STATES
     A CLAIM UPON WHICH RELIEF CAN BE GRANTED** ..............................6

    A.   CLAIM I, ASSERTING COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS,
          MUST BE DISMISSED .....................................................................................7

    B.   CLAIM II, ASSERTING BREACH OF CONTRACT AGAINST ALL DEFENDANTS,
          MUST BE DISMISSED. ....................................................................................10

    C.   CLAIM III, ASSERTING BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
          AND FAIR DEALING AGAINST ALL DEFENDANTS, MUST BE DISMISSED ................13

    D.   CLAIM IV, ASSERTING A CLAIM FOR QUANTUM MERUIT AGAINST ALL
          DEFENDANTS, MUST BE DISMISSED. ................................................................14

    E.   CLAIM V, ASSERTING PROMISSORY ESTOPPEL AGAINST DEFENDANTS
          CONSERVANCY AND WARRIE PRICE, MUST BE DISMISSED ...................................16

    F.   CLAIM VI, ASSERTING TORTIOUS INTERFERENCE WITH PROSPECTIVE
          ECONOMIC ADVANTAGE AND PRE-CONTRACTUAL RELATIONS AGAINST
          DEFENDANT PRICE, MUST BE DISMISSED .........................................................18

    G.   CLAIM VII, ASSERTING COMMERCIAL INTERFERENCE WITH CONTRACTS
          AGAINST DEFENDANT PRICE, MUST BE DISMISSED.............................................21

    H.   CLAIM VIII, ASSERTING IMMORAL TRADE PRACTICES AND MISAPPROPRIATION
          OF IDEAS AGAINST ALL DEFENDANTS, MUST BE DISMISSED ................................22

    I.   CLAIM IX (COUNT X IN PLAINTIFF'S AMENDED COMPLAINT), ASSERTING A
          VIOLATION OF § 14.03 OF THE NEW YORK ARTISTS' AUTHORSHIP RIGHTS ACT
          ("AARA"), MUST BE DISMISSED. .....................................................................23

    J.   REQUEST FOR INJUNCTION ...........................................................................24

**CONCLUSION** .........................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bd. of Mgr. of SoHo Int'l Arts Condo.* v. *City of New York*,
   No. 01-1226, 2003 WL 21403333 (S.D.N.Y. June 17, 2003) ................................................24

*Bell Atlantic Corp.* v. *Twombly*,
   127 S. Ct. 1955 (2007) ................................................................................................ passim

*Bones* v. *Prudential Fin., Inc.*,
   847 N.Y.S.2d 348 (N.Y. Sup. 2007) ...............................................................................16

*Byrne Compressed Air Equip. Co.* v. *Sperdini*,
   506 N.Y.S.2d 593 (N.Y. App. Div. 1986) ...........................................................................6

*Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*,
   70 N.Y.2d 382 (N.Y. 1987) .........................................................................................14, 15

*Cortec Indus.* v. *Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991)..............................................................................................7

*Crowley* v. *Visionmaker, LLC*,
   512 F. Supp. 2d 144 (S.D.N.Y. 2007).......................................................................5, 10, 17

*Duncan* v. *AT&T Commc'ns, Inc.*,
   668 F. Supp. 232 (S.D.N.Y. 1987)..................................................................................6

*Fasolino Foods Co.* v. *Banca Nazionale del Lavoro*,
   961 F.2d 1052 (2d Cir. 1992).......................................................................................13, 14

*Foman* v. *Davis*,
   371 U.S. 178 (1962)..........................................................................................................7

*Fonar Corp.* v. *Magnetic Resonance Plus, Inc.*,
   957 F. Supp. 477 (S.D.N.Y. 1997).................................................................................20, 21

*Gellerman* v. *Oleet*,
   625 N.Y.S.2d 831 ( N.Y. City Ct. 1995) .............................................................................18

*Gianni Versace, S.P.A.* v. *Versace*,
   No. 01-09645, 2003 WL 470340 (S.D.N.Y. Feb. 25, 2003)....................................................20

*Harris* v. *Provident Life & Accident Ins. Co.*,
   310 F.3d 73 (2d Cir. 2002)..............................................................................................14

*Henneberry* v. *Sumitomo Corp. of America*,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006).......................................................................18

*Hogan* v. *D.C. Comics*,
    48 F. Supp. 2d 298 (S.D.N.Y. 1999)...................................................................22, 23

*Joseph Martin, Jr., Delicatessen, Inc.* v. *Schumacher*,
    52 N.Y.2d 105 (N.Y. 1981) ..........................................................................11, 12, 17

*Kelly* v. *L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992) ...........................................................................8, 9

*Marvullo* v. *Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000).....................................................................10

*McGhan* v. *Ebersol*,
    608 F. Supp. 277 (S.D.N.Y. 1985)...................................................................22, 23

*New York Merchs. Protective Co.* v. *Rodriguez*,
    837 N.Y.S.2d 341 (N.Y. App. Div. 2007) ...............................................................21

*PPX Enters., Inc.* v. *Audiofidelity Enters., Inc.*,
    818 F.2d 266 (2d Cir. 1987)..........................................................................19, 20

*Prentice* v. *Apfel*,
    11 F. Supp. 2d 420 (S.D.N.Y. 1998).........................................................................2

*Sazerac Co., Inc.* v. *Falk*,
    861 F. Supp. 253 (S.D.N.Y. 1994).......................................................................2, 5

*Scutti Enters., LLC* v. *Park Place Entm't Corp.*,
    322 F.3d 211 (2d Cir. 2003)...........................................................19, 20, 21, 22

*Sheppard* v. *Beerman*,
    18 F.3d 147 (2d Cir. 1994).......................................................................................5

*Smith* v. *Positive Prod.*,
    419 F. Supp. 2d 437 (S.D.N.Y. 2005)....................................................................13

*Soumayah* v. *Minnelli*,
    839 N.Y.S.2d 79 (N.Y. App. Div. 2007) ...............................................................14

*Spencer Trask Software & Info. Servs.* v. *RPost Int'l Ltd.*,
    190 F. Supp. 2d 577 (S.D.N.Y. 2002).....................................................................24

*Zaro Licensing, Inc.* v. *Cinmar, Inc.*,
    779 F. Supp. 276 (S.D.N.Y. 1991)..........................................................................12

STATUTES

17 U.S.C. § 106A (2000), Visual Artists Rights Act of 1990 ("VARA") ...............................23, 24

17 U.S.C. § 301.............................................................................................................................23, 24

17 U.S.C. § 412.....................................................................................................................................9

New York Artists' Authorship Right Act, *N.Y. Arts & Cult. Aff. Law* §14.03
    ("AARA")..............................................................................................................................23, 24

New York General Obligations Law § 5-701(a)(1) (McKinney 2008 Suppl.)........................13, 17

OTHER AUTHORITIES

1 Richard A. Lord, *Williston on Contracts* § 3:2 (4th ed. 1990) ....................................................11

Fed. R. Civ. P.8........................................................................................................................... passim

Fed. R. Civ. P.12...................................................................................................................................5

Fed. R. Civ. P. 15(a) .............................................................................................................................7

Defendants The Battery Conservancy (the "Conservancy") and Ms. Warrie Price (collectively, the "Defendants"), through their undersigned counsel, respectfully submit this Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings ("Motion"), seeking dismissal with prejudice of all of the claims asserted against the Defendants in Plaintiff's First Amended Complaint, dated November 19, 2007 ("Amended Complaint"). [1]

## STATEMENT OF THE FACTS

The Battery Conservancy is a not-for-profit educational organization. Ms. Warrie Price is the Conservancy's founder and president. The plaintiff, Barbara Broughel, was chosen through an open competition to become a member of the team that was designing an aquatic-themed carousel for the Conservancy to install in Manhattan's Battery Park (the "Carousel Project"). Ms. Broughel was selected to perform one specific task: to design rideable carousel figures and a "chariot" for the carousel. (Finalist's Proposal Package cover sheet and The Battery Conservancy Marine Life Carousel Figures Artist Orientation Outline (collectively "Orientation Outline"), at 1, attached as Exhibit 2 to Defendants' Counterclaim, filed September 25, 2007 ("Counterclaim").) The architectural firm of Weisz + Yoes ("W+Y") had already been selected to design the carousel and supervise its construction at the time that Plaintiff became involved with the Carousel Project. [2] (Call to Artists ("Call"), at 1, attached as

---

[1] These include Claims I, II, III, IV, V, VI, VII, and VIII, and Count X. Although Plaintiff inconsistently styles her ninth purported cause of action "Count X," for the sake of uniformity and avoidance of confusion, this Memorandum refers to "Claim IX," rather than the aberrant Count X.

[2] Weisz + Yoes ("W+Y") was named as a defendant in the First Amended Complaint, dated November 19, 2007 ("Amended Complaint").

Exhibit 1 to Defendants' Counterclaim).  Plaintiff was advised from the beginning that her work had to fit into the W+Y design.  (Orientation Outline, at 2, 3.)

Plaintiff's involvement stems from the Conservancy's publication, in early January 2004, of a general "Call to Artists,"[3] which announced a competition and asked artists to submit references, resumes, slides of prior work, and a completed application to be considered by the Conservancy in selecting a designer of the rideable carousel figures (Call, at 1, 2).[4]  The Call provided background information on the Carousel Project and explained its basic concept:  an aquatic-themed carousel, featuring, instead of the usual horses, figures modeled after the species of fish and other marine animals that were featured in the original Battery Park aquarium.  (*See id.* at 1.)

The Conservancy received many responses to the Call.  Three individuals (including Plaintiff) and two teams were chosen as recipients of a Finalist's Proposal Package dated February 2, 2004.  (Orientation Outline, at cover sheet, 4.)  Included in the Finalists' Proposal Package was a copy of  the Orientation Outline, which served as a guide to the artist selection process and specified certain details of the selected artist's role in the Carousel Project.  The Orientation Outline provided, *inter alia*:  (1) details of

---

[3] The Amended Complaint refers to the Call to Artists ("Call") (attached as Exhibit 1 to Defendants' Counterclaim, filed September 25, 2007 ("Counterclaim")) as the "RFP," and purports to quote from that document in Paragraph 11.  The passages quoted, however, are not from the Call; they are from The Battery Conservancy Marine Life Carousel Figures Artist Orientation Outline (with the Finalist's Proposal Package cover sheet hereinafter referred to collectively as the "Orientation Outline"; attached as Exhibit 2 to Defendants' Counterclaim).

[4] On this Motion, the Court is free to consider the Call and all the other exhibits attached to the pleadings, as well as "statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party, so long as such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings."  *Prentice* v. *Apfel*, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998).  "[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."  *Sazerac Co.* v. *Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994).

the budget within which the selected artist would have to work (stated to be "up to $50,000 depending on the final scope of the work" (Orientation Outline, at 3)); (2) a requirement that the selected artist provide "[p]resentation drawings and models as required for approvals and fundraising" (*id.*); and (3) a requirement that the selected artist create "one life-size figure" for display at the Conservancy's annual fundraising gala (*id.* at 5). Ms. Broughel was notified that she was selected to be part of the Carousel Project's design team by letter dated April 5, 2004. (Amended Complaint ("Am. Compl.") ¶ 13.)

        As the pleadings demonstrate without dispute, W+Y, as the architectural firm charged with responsibility for the overall design of the Carousel Project, contracted with Plaintiff on January 20, 2006 ("W+Y Contract," attached as Exhibit 3 to Defendants' Counterclaim). (Am. Compl. ¶ 17.) The W+Y Contract required Plaintiff to perform the following five tasks:

> "[1] Collaborate with Design Team to develop interior design
> elements of the Carousel
> [2] Overall Plan for Carousel Figures
> [3] Design for each of the individual Carousel Figures[5]
> [4] Model of the Carousel + Figures @ small scale (physical model
> to be produced with Scenic Technologies)
> [5] Prototype of one Figure @ full scale (physical model to be
> produced with Scenic Technologies)."

(W+Y Contract, at 2.)

        W+Y terminated the W+Y Contract on March 15, 2006. (Counterclaim ¶ 23.) Acknowledging that she had completed only four of the five tasks she was

---

[5] Contrary to the assertion in Paragraph 17 of the Amended Complaint, nowhere in the contract between Plaintiff and W+Y, dated January 20, 2006 (the "W+Y Contract") does the language "species selection" appear.

obligated to perform under the W+Y Contract,[6] Plaintiff thereafter entered into a contract

with the Conservancy, dated July 12, 2006 ("Letter Contract," attached as Exhibit 4 to

Defendants' Counterclaim).  Plaintiff promised that she would, "[i]n the near future,"

complete the task of creating "a schematic, scalable design for each of the individual

Carousel Figures."  (Letter Contract.)  She had previously been obligated to perform this

task under [3] of the W+Y Contract, which required a "Design for each of the individual

Carousel Figures" (*see supra* p. 3), but had not done so.  (Letter Contract.)

It is undisputed that, nine months later, on March 21, 2007, the

Conservancy terminated the Letter Contract.  (Am. Compl. ¶ 30.)  By letter dated

April 12, 2007, the Conservancy confirmed its prior termination of the Letter Contract

(Am. Compl. ¶ 31) and explained its reasons.  In response, Plaintiff filed her original

Complaint on August 31, 2007.

Following the Initial Pretrial Conference on November 20, 2007, Plaintiff

amended her Complaint, naming Claire Weisz and Mark Yoes d/b/a W+Y as additional

defendants.  Defendants were not served with the Amended Complaint until

December 17, 2007, Plaintiff having neglected to make any attempt to effect process

despite Defendants' repeated requests to receive the Amended Complaint.

---

[6] The contract between Plaintiff and The Battery Conservancy (the "Conservancy"), dated July 12, 2006 ("Letter Contract") (attached as Exhibit 4 to Defendants' Counterclaim) states:  "[s]ervices that you provided under contract with Weisz + Yoes were as follows:  1. Collaborated with Design Team to develop interior design elements of the Carousel[;] 2. Overall Plan for Carousel Figures[;] 3. Model of the Carousel and figures[;] 4. Prototype of one full scale figure produced by PRG."

## ARGUMENT

### I.    Legal Standard.

On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), although courts generally "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant," *Sheppard* v. *Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp.* v. *Twombly*, 127 S. Ct. 1955, 1965 (2007) (citing *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986)).[7] Moreover, where allegations and inferences are inconsistent with exhibits to the pleadings, other materials incorporated in the pleadings and materials submitted by the parties on the motion, the documentary materials control. *Sazerac Co.* v. *Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994). As the Supreme Court recently ruled in the *Twombly* case, the complaint's allegations must also meet the "threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 127 S. Ct. at 1966. "[L]abels and conclusions, and a *formulaic recitation of the elements* of a cause of action will not do." *Id.* at 1965 (emphasis added). Instead, a claimant must "satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at n.3; s*ee Crowley* v. *Visionmaker, LLC*, 512 F. Supp. 2d 144, 151 (S.D.N.Y. 2007).

The allegations of the Amended Complaint are deficient under *Twombly*. None of the Amended Complaint's nine claims against the Defendants is pleaded beyond

---

[7]  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) was at issue in *Bell Atlantic Corp.* v. *Twombly*, 127 S. Ct. 1955 (2007), but, "[i]n deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard* v. *Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

speculation to plausibility.  *See Twombly,* 127 S. Ct. at 1965.  The allegations lack factual specificity, consisting overwhelmingly of a "formulaic recitation of the elements of a cause of action" which, as *Twombly* makes plain, "will not do."  *Id.*  Indeed, frequently Plaintiff fails to allege all of the elements of a cause of action, even formulaically.  The allegations are "so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains," *Duncan* v. *AT&T Commc'ns, Inc.*, 668 F. Supp. 232, 234 (S.D.N.Y. 1987), and are, therefore, "as a matter of law, insufficient to state a claim."  *Id.*  Rarely does the Amended Complaint even identify *which* Defendant is alleged to have acted.  Furthermore, in the exceptional instance in which the claims verge on specificity, they are contradicted by the relevant documents.

These fundamental failures to state any cognizable claims also confirm Plaintiff's ineligibility for the injunctive relief she requests, in the form of either a temporary restraining order ("TRO") or a permanent injunction by, *inter alia*, demonstrating that she cannot make the necessary showing of a likelihood of success on the merits.[8]

## II.    None of the Nine Claims of the Amended Complaint States a Claim upon Which Relief Can Be Granted.

The Amended Complaint's allegations fail to specify the grounds of the claims against the Defendants, contrary to Rule 8(a)(2).  *Twombly*, 127 S. Ct. at 1965 n.3. To the extent that any claim does provide some specificity, the relevant exhibits to the

---

[8] The Court need not consider Plaintiff's request for a permanent injunction at this time because such an injunction may only issue after success on the merits at trial.  *Byrne Compressed Air Equip. Co.* v. *Sperdini*, 506 N.Y.S.2d 593, 594 (N.Y. App. Div. 1986).

pleadings contradict Plaintiff's allegations.  Thus, the Amended Complaint must be

dismissed, with prejudice.[9]

**A.     Claim I, Asserting Copyright Infringement Against All Defendants, Must Be Dismissed.**

Plaintiff's first claim purports to allege copyright infringement against the

Defendants.  In Paragraph 34, incorporated by reference in Claim I, Plaintiff alleges that

"Defendants have reproduced, transmitted and displayed images of Plaintiff Broughel's

copyrighted artwork on their respective websites without authorization or credit."  The

Amended Complaint also alleges, in Paragraph 38, that unspecified "conduct" of the

Defendants "violates . . . rights belonging to Plaintiff . . . as owner of the copyrights in

the artworks of the Project."  Similarly, Paragraph 36 asserts that Plaintiff holds

copyright in "all designs of the Project."  The "Project," however, is defined as

encompassing carousel figures, "floor, lighting, cinematic elements, sounds and

enclosures," and nothing in Claim I identifies what part of this vast array of works

belongs to Plaintiff.[10]  Nor is this lack supplied by the materials that Plaintiff has attached

to the Amended Complaint.  Also missing from Claim I is any specific description of

Defendants' allegedly "infringing conduct."  These allegations are classic examples of

---

[9] Plaintiff has already amended her complaint once, and allowing her to do so a second time would be futile, because the Amended Complaint suffers from the same pleading deficiencies as the original Complaint.  This Court may, in its discretion, deny leave to amend under Fed. R. Civ. P. 15(a) if plaintiff exhibits a "repeated failure to cure deficiencies by amendments previously allowed."  *Foman* v. *Davis*, 371 U.S. 178, 182 (1962); *Cortec Indus.*, *Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[W]here a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

[10] Plaintiff defines "the Project" as the proposal she made in attempting to win a place on the design team.  (Am. Compl. ¶¶ 1, 13.)  While the Defendants have no knowledge of the origin of Plaintiff's competition proposal, the exhibits to the pleadings clearly show that Plaintiff did not create "all designs" of the Carousel Project.  The Call, for example, contained two images of the conceptual design of the carousel that W+Y had created. (Call, at 4, 5.)  Plaintiff's role was limited in scope to the design of the carousel figures. (Call, at 1.)

alleging legal conclusions without factual "grounds" therefor, which, as the Supreme

Court noted in *Twombly*, are insufficient to withstand a motion to dismiss.

In this Court, "a properly plead copyright infringement claim must allege

1) which specific original works are the subject of the copyright claim, 2) that plaintiff

owns the copyrights in those works, 3) that the copyrights have been registered in

accordance with the statute, and 4) by what acts during what time the defendant infringed

the copyright." *Kelly* v. *L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992). The Amended

Complaint fails to provide the required *factual* allegations as to *any* of these four

elements.

First, the Amended Complaint nowhere identifies any specific original

work or works that are the subject of the alleged infringement. As stated above, although

Plaintiff alleges that she owns the copyright in "all designs of the Project" (Am. Compl.

¶ 36), this allegation is both extremely broad and unenlightening. It also fails to suggest

the requisite originality, which cannot be assumed given W+Y's extensive work on the

Carousel Project. As to the second element of a copyright claim—ownership of a

copyright in the allegedly infringed works—Plaintiff has attached to the Amended

Complaint (as Exhibit B) a copy of a Certificate of Registration that the United States

Copyright Office issued to Plaintiff, effective as of March 22, 2007 (Am. Compl. ¶ 37).

Exhibit B contains more than sixty images of copyrighted works. The Amended

Complaint nowhere specifies which, if any, of the images in Exhibit B corresponds to

Plaintiff's claimed ownership "of the copyrights in the artworks of the Project" (Am.

Compl. ¶ 38). Nor does the Amended Complaint otherwise identify which of the

registered images—if any—is the subject of her claim. *See Kelly*, 145 F.R.D. at 36. A

properly pled complaint for copyright infringement must give Defendants notice of the specific works at issue—not merely append dozens of images.  It must also plead ownership and proper registration of the allegedly infringed works.  The Amended Complaint meets not one of these requirements.

It likewise fails to satisfy the requirement of specifically alleging what acts of Defendants are infringing, and when those specific acts occurred.  "Rule 8 requires that the particular infringing acts be set out with some specificity.  Broad, sweeping allegations of [copyright] infringement do not comply with Rule 8."  *Kelly*, 145 F.R.D. at 36. n.3 (citation omitted).  Yet the Amended Complaint contains only the extremely general averment that Defendants have used unidentified "copyrighted artwork on their respective websites" (Am. Compl. ¶ 34).  Furthermore, by attaching "[e]xamples of the infringing uses from Defendants' website . . . as Exhibit C" (Am. Compl. ¶ 38), Plaintiff implicitly also alleges that there are other unidentified infringing "examples."  Even assuming that the "examples" could meet the requirement of alleging specific infringing acts, the Amended Complaint fails to state *when* any such infringing images appeared on the websites.  This is of importance for several reasons, including that Plaintiff cannot receive the alleged statutory damages for activity prior to the alleged copyright registration of her unpublished works in March 2007.  *See* 17 U.S.C. § 412.  Thus Plaintiff's vague allegations of infringement of unspecified rights in unspecified works at unspecified times do not meet the requirements of Rule 8.  Claim I should,

accordingly, be dismissed.[11]  *See Marvullo* v. *Gruner & Jahr*, 105 F. Supp. 2d 225, 231

(S.D.N.Y. 2000).

**B.     Claim II, Asserting Breach of Contract Against All Defendants, Must Be Dismissed.**

Claim II purports to assert a cause of action for breach of contract against

the Defendants, but must also be dismissed for failing to meet basic pleading

requirements.[12]  "To state a claim for breach of contract under New York law, a plaintiff

must allege:  (1) the existence of a contract; (2) that the plaintiff has performed his or her

obligations under the contract; (3) that the defendant failed to perform his or her

obligations thereunder; and (4) that plaintiff was thereby damaged. . . . 'In pleading these

elements, a plaintiff must identify what provisions of the contract were breached as a

result of the acts at issue.'"  *Crowley*, 512 F. Supp. 2d at 151 (internal citations omitted)

(quoting *Wolff* v. *Rare Medium, Inc*., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)).

In a departure from the pervading vague generalities of the Amended

Complaint, Claim II does articulate three sets of "obligations to Plaintiff" that the

Defendants have allegedly breached:  preventing "her from supervising the fabrication of

the prototype for consistency with her aesthetic judgment"; failing to meet "contractual

obligations, including making payments"; and obstructing "completion of the Project . . .

by failure to negotiate in good faith subsequent phases of the Project as required by the

---

[11] As part of Claim I, the Amended Complaint purports to seek a declaratory judgment.  (Am. Compl. ¶ 42.)  In view of Plaintiff's claim for copyright infringement and damages, invoking declaratory judgment jurisdiction is redundant.

[12] Although Plaintiff asserts that "Defendants" breached some contract, Ms. Price never contracted with Plaintiff at all.  (*See* Letter Contract; W+Y Contract.)  Thus, to the extent any claim were stated, it would be solely against the Conservancy, and Claim II would have to be dismissed at the outset against Ms. Price.

RFP." (Am. Compl. ¶ 45.) However, no contract between any Defendant and Plaintiff imposes any such obligations on any Defendant. (*See* Letter Contract.)

The only writing identified by the Amended Complaint as an alleged basis for its breach of contract claim is the Call to Artists,[13] to which the Amended Complaint refers as the "RFP." (Am. Compl. ¶ 44.) As noted, that is *not* a contract between Plaintiff and any Defendant. Furthermore, on its face, the Call contains no promise that the chosen artist will supervise fabrication of any prototype, much less effect an "aesthetic judgment" regarding any prototype. (*See* Call.) Similarly absent from this document is any promise that the Conservancy will negotiate future contracts.[14] While the Call does promise payment of a $1,000 honorarium to the artist selected (Call, at 2), Plaintiff has been paid that honorarium in full, and nowhere in the pleadings does Plaintiff allege otherwise.

Although Plaintiff also alleges that she has performed duties imposed by "further agreements," no such agreements are identified in the Amended Complaint, nor are the terms of any contract imposing the alleged obligations anywhere set out.[15] The

---

[13] Even if the Call could be considered a contract, which it cannot, it cannot form the basis of a breach of contract claim against the Conservancy because, as appears from the face of the Call, the Conservancy performed all of its obligations thereunder. To further confuse matters, the Amended Complaint *quotes* the Orientation Outline, to which it erroneously refers as the Call. *See supra* note 3.

[14] Even if there were such a promise, it would not be enforceable. *Joseph Martin, Jr., Delicatessen, Inc*. v. *Schumacher*, 52 N.Y.2d 105, 109 (N.Y. 1981). Moreover, following the "Call to Artists" process, Plaintiff was indeed awarded a contract with W+Y (*see* Am. Compl. ¶ 17), and later with the Conservancy (*see* Am. Compl. ¶ 30).

[15] To the extent that Plaintiff is relying on the Orientation Outline as one of the "further agreements" that Defendants have allegedly breached, Plaintiff still fails to state a breach of contract claim. The Orientation Outline has none of the essential attributes of a contract or even of an offer to contract. *See* 1 Richard A. Lord, *Williston on Contracts* § 3:2, at 259-60 (4th ed. 1990) ("The test for enforceability of an agreement is: (1) whether both or all parties . . . manifest objectively an intent to be bound by the agreement; (2) whether the essential terms of the agreement are sufficiently definite to be enforced; (3) whether there is consideration . . . ."). The Orientation Outline is simply a description of the process the Conservancy

……..continued

- 11 -

Amended Complaint alleges, at most, that on July 12, 2006, the Conservancy and

Ms. Price "agreed to contract" with Plaintiff (Am. Compl. ¶ 26). Not only is an

agreement to agree nonbinding and incapable of forming the basis of a breach of contract

claim, *Joseph Martin, Jr., Delicatessen, Inc*. v. *Schumacher*, 52 N.Y.2d 105, 109 (N.Y.

1981), it is undisputed that the Conservancy entered into the Letter Contract with

Plaintiff. Thus, even if such an agreement to contract were enforceable, it was admittedly

not breached.

    To the extent that Plaintiff intended to allege that the Letter Contract is

one of the undefined "further agreement[s]"[16] allegedly breached, she would still fail to

state a claim, because Plaintiff nowhere makes the essential allegation that she performed

all of the tasks required by the Letter Contract, nor could she do so. (*See* Letter

Contract.) Although Plaintiff alleges that the "Conservancy requested that [she] direct

the production of a new second full-scale prototype as a 'tax-deductible, pro-bono

contribution'" (Am. Compl. ¶ 26), this allegation not only fails to state an enforceable

obligation, Paragraph 29 of the Amended Complaint admits that Plaintiff in fact received

the alleged consideration: a letter recognizing her tax-deductible, pro-bono contribution.

Thus, even if this allegation sufficiently pled an enforceable agreement, it was admittedly

---

……..continued

intended to follow in selecting an artist to work on the Carousel Project. Even if the Orientation Outline
could somehow constitute an enforceable contract, Plaintiff has not "allege[d] the terms of the contract,
each element of the alleged breach and the resultant damages." *Zaro Licensing, Inc*. v. *Cinmar, Inc*., 779 F.
Supp. 276, 286 (S.D.N.Y. 1991). To the extent that the Orientation Outline mentions future contracts, as
noted above, even a "contract" to contract is not an enforceable contract. Furthermore, the Conservancy
did enter into the Letter Contract with Plaintiff.

[16] Plaintiff later seems to label the agreement to agree "the prototype agreement of July 12, 2006." (Am.
Compl. ¶ 30.)

- 12 -

not breached by Defendants.[17]  Having pled no enforceable agreement that was breached

by any Defendant and performed by Plaintiff, Count II fails to state a claim for breach of

contract upon which relief can be granted.[18]

**C.    Claim III, Asserting Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants, Must Be Dismissed.**

Claim III alleges that Defendants have breached "a covenant of good faith

and fair dealing," supposedly "implicitly included" in the Call and the W+Y Contract—

the latter, of course, being a contract to which Defendants were not parties.  (Am. Compl.

¶ 48.)  Thus, even if such a covenant existed in the W+Y Contract and was breached, the

Conservancy and Ms. Price cannot, as a matter of law, be liable for any such breach,

since neither was a party to that contract, as the Amended Complaint admits.  (*Id.* at

¶ 17.)  *See Fasolino Foods Co.* v. *Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d

Cir. 1992).

As noted above, neither the Call nor the Orientation Outline (which

Plaintiff confuses) constitute contracts.  Even if they were, however, the facts that

Plaintiff pleads with respect to the claimed breach of the implied covenant of good faith

and fair dealing are the same as those pled—albeit deficiently—with respect to Plaintiff's

breach of contract claim.  New York law does not recognize an independent cause of

---

[17] To the extent that the unidentified "further agreements" of the Amended Complaint (Am. Compl. ¶ 44) refer to agreements that are not the subject of a writing and that "could not be performed within one year from the making thereof," Plaintiff's allegations must fail under the Statute of Frauds.  New York General Obligations Law § 5-701 (McKinney 2008 Suppl.).

[18] Plaintiff also fails to plead damages properly; "injury to reputation" (Am. Compl. ¶ 46), for example, is not cognizable as a form of contract damages.  *Smith* v. *Positive Prod.*, 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005) ("Damages to reputation generally are not recoverable in a breach of contract action under New York law.").  Nor has she shown any tie between alleged "lost profits" or "lost commissions" and any breach of contract.  (Am. Compl. ¶ 46.)  Indeed, the only contract with the Conservancy that Plaintiff comes close to identifying is the Letter Contract, which she alleges entailed her "pro-bono contribution" with no payment due to her.  (Am. Compl. ¶ 26.)

action for breach of the implied duty of good faith, where, as here, "a breach of contract claim, based upon the same facts, is also pled." *Harris* v. *Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). The reason for this rule is both simple and plain: although "parties to an express contract are bound by an implied duty of good faith," a "breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co.*, 961 F.2d at 1056 (citation omitted). Thus, Plaintiff has no separate claim for breach of any implied covenant of good faith and fair dealing. *See Harris*, 310 F.3d at 81.

**D.    Claim IV, Asserting a Claim for Quantum Meruit Against All Defendants, Must Be Dismissed.**

Claim IV of the Amended Complaint alleges that Plaintiff is entitled to recover *quantum meruit* for the allegedly "valuable services" that Plaintiff provided "for the benefit of Defendants outside of any contractual obligations" (Am. Compl. ¶ 52), services for which she allegedly "has not been compensated," so that "Defendants have benefited unjustly" (Am. Compl. ¶ 53). To assert a claim for *quantum meruit,* New York law requires the complaint to "allege (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Soumayah* v. *Minnelli*, 839 N.Y.S.2d 79, 81 (N.Y. App. Div. 2007) (citations omitted). Moreover, because a claim of *quantum meruit* sounds in quasi contract, and exists only "where there has been no agreement or expression of assent, by word or act, on the part of either party involved," the services on which the claim is based cannot be the subject of contract. *Clark-Fitzpatrick, Inc*. v. *Long Island R.R. Co*., 70 N.Y.2d 382, 388-89 (N.Y. 1987) (quoting *Bradkin* v. *Leverton*, 26 N.Y.2d 192, 196 (N.Y. 1970) (emphasis omitted).

- 14 -

Claim IV does not allege even the first element of an action for *quantum meruit*; it simply alleges, in a completely conclusory manner, that Plaintiff "provided valuable services," with absolutely no elucidation as to what those were.  (Am. Compl. ¶ 52.)  This is merely the statement of a legal conclusion, which is insufficient under Rule 8.  *See Twombly*, 127 S. Ct. at 1965.  Although the Amended Complaint does allege that "[b]etween April 2004 and March 2007, the Defendant Conservancy requested the Artist to perform numerous tasks to promote the Project and to contribute to fundraising efforts, which tasks exceeded any contractual obligation" (Am. Compl. ¶ 15), these tasks, too, are unspecified.  In addition, no facts appear that would satisfy the other elements of a valid claim for *quantum meruit*, including the acceptance of the unspecified services or their value.

The closest thing to specificity is the allegation that the Defendants requested Plaintiff to "supply a model, and 28 water color paintings ('Artist's Extra Work') for Project fundraising."  (Am. Compl. ¶ 16.)  There is, however, no allegation that these items were in fact supplied to and accepted by the Conservancy, that Plaintiff reasonably expected compensation therefor, or what their value was.  In fact, in Plaintiff's Reply to Counterclaim ("Reply"), dated October 11, 2007, Plaintiff admits that she "retained physical possession of the watercolor paintings."  (Reply ¶ 12.)  Indeed, by referring to Plaintiff's rendering an invoice for these "requested" items "as per agreed-upon terms for the Artist's Extra Work" (Am. Compl. ¶ 16), the Amended Complaint seems to allege that this work was done pursuant to a contract.  If so, no claim of *quantum meruit* can lie with respect to those alleged services.  *Clark-Fitzpatrick*, 70 N.Y.2d at 388-89.

Similarly, while Paragraph 18 refers to "extra services" outside the scope of Plaintiff's contract with W+Y that were "requested by the Defendants with the mutual understanding that Plaintiff Broughel would be compensated for the extra services, costs and disbursements," not only are these completely unspecified, the reference to "mutual understanding" suggests a claimed contractual obligation, not a basis for *quantum meruit*. (Am. Compl. ¶ 18.)

By its conclusory factual allegations and failure to plead the elements of a claim for *quantum meruit*, the Amended Complaint fails to make "a 'showing,' rather than a blanket assertion, of entitlement to relief," and Claim IV must, therefore, be dismissed. *Twombly*, 127 S. Ct. at 1965 n.3.

## E.    Claim V, Asserting Promissory Estoppel Against Defendants Conservancy and Warrie Price, Must Be Dismissed.

Claim V's assertion that Defendants "are estopped from the arbitrary and capricious termination of Plaintiff Broughel" is fatally defective because the Amended Complaint does not allege any clear and unambiguous promise by Defendants—the *sine qua non* for promissory estoppel. "To avoid dismissal of a promissory estoppel claim, a plaintiff must allege (i) an unambiguous promise; (ii) reasonable and foreseeable reliance on the promise; (iii) and injury as a result of that reliance." *Bones* v. *Prudential Fin., Inc.*, 847 N.Y.S.2d 348, 351 (N.Y. Sup. Ct. 2007) (citation omitted).

The Amended Complaint does not allege any unambiguous, specific promise by either the Conservancy or Ms. Price.  It does allege that Ms. Price made "demands for pro-bono services"—without describing the content of those demands or the pro-bono work—(Am. Compl. ¶ 58), and that Plaintiff was promised that she "would

complete the Project if she contributed 'pro bono work'" (Am. Compl. ¶ 59).[19]  Who made this additional promise, or when it was made, nowhere appears.  Nor does the Amended Complaint explain what completing the Project entailed.[20]

Moreover, the allegation that she "would complete the Project" if she contributed pro bono work, would, in any case, be unenforceable under the Statute of Frauds.  This vague allegation fails as a matter of law because at no point during Plaintiff's entire relationship with the Conservancy could the Carousel Project have been completed in one year.[21]  New York General Obligations Law § 5-701(a)(1) (McKinney 2008 Suppl.) (stating that every promise is "void, unless it or some note or memorandum thereof be in writing . . . if . . . [b]y its terms is not to be performed within one year from the making thereof").  The allegation that Plaintiff contributed pro-bono services "in reliance on future contracts" (Am. Compl. ¶ 59) is likewise unenforceable because it constitutes an agreement to agree at a later date, and such agreements are not enforceable. *Joseph Martin, Jr.*, 52 N.Y.2d at 109.

Likewise insufficient are the allegations of Paragraph 58, that "she agreed to provide [pro-bono services] only on condition of her continued participation in the

_____

[19] The only "pro-bono work" identified anywhere in the Amended Complaint is the Conservancy's alleged request that Plaintiff "direct production of a new second full-scale prototype." (Am. Compl. ¶ 26.)  But "direct[ing] the production of a full scale prototype model of half a fish" is a subject of the Letter Contract, and thus not a proper basis for a promissory estoppel claim.  A "written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  *Crowley* v. *Visionmaker, LLC*, 512 F. Supp. 144, 153 (S.D.N.Y. 2007).  Furthermore, to the extent that Plaintiff alleges that she agreed to perform this service pro-bono (Am. Compl. ¶ 26), she likewise alleges that she received a letter acknowledging her pro-bono contribution and its tax-deductible nature; that is, she received the bargained-for consideration.  (*Id.* ¶ 29.)

[20] *See supra* note 10 and *infra* note 23 (noting the Amended Complaint's conflicting references to the "Project").

[21] *See* Orientation Outline, at 5 (setting out timetable showing that, as of February 2, 2004, the date of that document, the Carousel Project would not be completed for two years).

- 17 -

Project." Far from being clear and unambiguous, this allegation does not even aver that any such participation was ever *promised* by any Defendant, only that it was demanded by Plaintiff. Moreover, this allegation fails to allege injury because, until March 2007, Plaintiff did, indeed, continue to participate in the Project, as she admits. (Am. Compl. ¶¶ 27, 29.) *See Gellerman* v. *Oleet*, 625 N.Y.S.2d 831, 833 ( N.Y. City Ct. 1995) (finding no claim for promissory estoppel where alleged promise "was, at best, a promise to continue negotiations" and, in fact, the negotiations continued).

The Amended Complaint also fails to allege the necessary *reasonable* and *foreseeable reliance* by Plaintiff. There are no factual allegations of any specific services provided by Plaintiff, only that she "contributed $20,000 in pro bono services." (Am. Compl. ¶ 59.) Nor, as noted above, does Plaintiff allege any injury.[22] Furthermore, pleading the reliance element requires facts showing "that the actions [Plaintiff] took in reliance . . . 'were unequivocally referable' to the alleged promise." *Henneberry* v. *Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 444 (S.D.N.Y. 2006) (internal citations omitted). No such showing is made by the Amended Complaint.

**F.     Claim VI, Asserting Tortious Interference with Prospective Economic Advantage and Pre-Contractual Relations Against Defendant Price, Must Be Dismissed.**

Claim VI alleges that Ms. Price "intentionally interfered with the Artist's execution of the Project"[23] and "caused injury to Artist's relationship with the Defendant Conservancy." (Am. Compl. ¶¶ 65, 67.)

---

[22] *See supra* note 18 (discussing Plaintiff's failure to properly plead damages).

[23] In Paragraphs 1 and 13 of the Amended Complaint, "the Project" is defined to mean Plaintiff's competition proposal, which she admits she "presented . . . to the Selection Committee." (Plaintiff's Reply to Counterclaim, dated October 11, 2007, ¶ 10.) Consequently, Plaintiff must have another meaning in mind when, in Paragraph 65, she alleges interference with her execution of "the Project."

The tort invoked has been variously referred to as tortious interference with "prospective economic advantage, beneficial business relations, prospective business advantage, and business or economic relations." *PPX Enters., Inc.* v. *Audiofidelity Enters., Inc.*, 818 F.2d 266, 269 (2d Cir. 1987). However styled, "the elements necessary to establish such a claim remain constant," *id.*, and consist of facts alleging that "(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." *Scutti Enters., LLC* v. *Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003).

The first element necessary to plead a claim for tortious interference with prospective economic advantage requires a "business relationship not amounting to a contract." *PPX Enters.,* 818 F.2d at 270 (internal citations omitted). Indeed, Claim VI is styled as one for interference with "Prospective Economic Advantage and Pre-Contractual Relations," and the business relations alleged are "with the Defendant Conservancy." (Am. Compl. ¶ 63.) Yet, as the Amended Complaint alleges, Plaintiff's "relations" with the Conservancy were contractual, the subject of the Letter Contract.[24] (*See* Letter Contract; Am. Compl. ¶ 30.) Thus the Amended Complaint does not identify any *pre-contractual* relations with which Ms. Price did—or even *could*—interfere; all relations were *contractual*.

---

[24] To the extent that Plaintiff could be said to rely on a relationship with W+Y, which is not alleged, that relationship was also the subject of a contract—the W+Y Contract.

Even if it were possible to allege tortious interference with pre-contractual relations where a plaintiff was at all relevant times alleged to be involved only in contractual relationships, Claim VI would have to be dismissed against Ms. Price because the Amended Complaint nowhere specifies any actions that Ms. Price took to interfere with any commercial relationship between Plaintiff and the Conservancy. To plead the second element properly, a complaint must set forth facts describing *how* the defendant interfered with the third-party relationship. *See Gianni Versace, S.P.A.* v. *Versace*, No. 01-09645, 2003 WL 470340, at *2 (S.D.N.Y. Feb. 25, 2003) (complaint must state how the defendant directed "some activities towards the third party and convince[d] the third party not to enter into a business relationship with the plaintiff"); *see also Fonar Corp*. v. *Magnetic Resonance Plus, Inc*., 957 F. Supp. 477, 482 (S.D.N.Y. 1997). Conclusory allegations do not suffice, yet all that is alleged here is that Ms. Price "intentionally interfered with the Artist's execution of the Project." (Am. Compl. ¶ 65.)

Also lacking is any allegation of facts showing that Ms. Price acted for "the sole purpose of harming the plaintiff," *PPX Enters., Inc.*, 818 F.2d at 269, or by wrongful means, which New York courts define as "representing physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the [prospective] contract." *Scutti Enters.*, 322 F.3d at 216 (internal quotations omitted). No such facts—which are necessary to satisfy the third element of this claim—appear from the Amended Complaint.[25]

---

[25] The allegation in the Amended Complaint that Plaintiff was terminated "to enable Defendants to use Artist's intellectual property" (Am. Compl. ¶ 32) can apply only to the Conservancy, not Ms. Price. The only allegations as to Ms. Price are the conclusory statement that she "prevented the Artist's input" (Am.

……..continued

The Amended Complaint likewise fails to state a cognizable injury to Plaintiff's relationship with the Conservancy, since she admits that, on July 12, 2006, she entered into an actual contract with the Conservancy—an admission that Ms. Price did not, in fact, prevent the Conservancy from entering into a business relationship with Plaintiff.  (Am. Compl. ¶ 30.)  *See Fonar*, 957 F. Supp. at 482.  As Plaintiff has failed to allege any of the four elements in her claim for tortious interference with pre-contractual relationship against Ms. Price, Claim VI must be dismissed.

**G.    Claim VII, Asserting Commercial Interference with Contracts Against Defendant Price, Must Be Dismissed.**

As New York law provides no cause of action for "Commercial Interference with Contracts," Defendants assume that this claim against Ms. Price for "intentionally procur[ing] the breach of [the W+Y] contract" (Am. Compl. ¶ 70) was meant to sound in tortious interference with contract.  Once again, required elements of such a claim are missing.

Under New York law, "the elements of a cause of action to recover damages for tortious interference with contract . . . are [1] the existence of a valid contract with a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional and improper procuring of a breach, and [4] damages."  *New York Merchs. Protective Co.* v. *Rodriguez*, 837 N.Y.S.2d 341, 342 (N.Y. App. Div. 2007).  Although Claim VII identifies the W+Y Contract as the contract allegedly interfered with (Am.

---

……..continued

Compl. ¶ 19) and the assertion that Ms. Price told Plaintiff that Ms. Price "wanted to do other things . . . without spending the time working with an artist" (Am. Compl. ¶ 31), which do not amount to a "wrongful purpose."  *See Scutti Enters., LLC* v. *Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003).  The boilerplate recital of the legal elements of the tort (*see* Am. Compl. ¶ 66) does not suffice.  *See Twombly*, 127 S. Ct. at 1964-65.

Compl. ¶ 69), the Amended Complaint identifies *no* act by Ms. Price that procured the breach of that contract.[26]  Furthermore, Paragraph 18 positively avers the lack of any breach, by averring that Plaintiff provided "all services" required by the W+Y Contract and that she "was paid for" those services.  Thus, this claim must be dismissed.[27]

## H.    Claim VIII, Asserting Immoral Trade Practices and Misappropriation of Ideas Against All Defendants, Must Be Dismissed.

Based upon Defendants' alleged use of Plaintiff's "novel and original ideas" without contracting with her to complete the carousel, and without her permission, credit or monetary compensation (Am. Compl. ¶¶ 74, 75), Claim VIII purports to assert "immoral trade practices and misappropriation of ideas."  New York law, however, does not recognize a tort of "immoral trade practices" that protects ideas.

The tort of misappropriation of ideas that New York *does* recognize requires a plaintiff to allege the existence of a legal relationship between the parties that is either a fiduciary relationship "or [one] based on an express contract, an implied-in-fact contract, or a quasi-contract."  *McGhan* v. *Ebersol*, 608 F. Supp. 277, 284 (S.D.N.Y. 1985); *see also Hogan* v. *D.C. Comics*, 48 F. Supp. 2d 298, 314 (S.D.N.Y. 1999).  Furthermore, the idea "misappropriated" must be concrete and novel.  The "test for novelty is a stringent one:  the idea must show genuine novelty and invention, and not

---

[26] Paragraph 70 of the Amended Complaint also alleges in the alternative that "Defendant Price . . . intentionally procured the breach of . . . prospective contract."  This, however, is not a proper allegation for a claim of tortious interference with contract and fails as a matter of law.  *See Scutti Enters.*, 322 F.3d at 215 ("[A] central requirement for this cause of action [tortious interference with contractual relations] is the existence of a valid, enforceable contract between the plaintiff and a third party.").  *See also supra* Section F (stating the elements of a claim for tortious interference with prospective economic advantage).

[27] Plaintiff also fails to assert any damages resulting from the allegedly procured breach of the W+Y Contract.  The Amended Complaint admits that Plaintiff formed a contract with the Conservancy allowing her to continue her work on the Carousel Project after the termination of the W+Y Contract by W+Y. (*See* Am. Compl. ¶¶ 26, 30.)

- 22 -

merely a clever or useful adaptation of existing knowledge." *Hogan*, 48 F. Supp. 2d at 314 (internal quotation omitted). Finally, "[a] plaintiff cannot recover for misappropriation of ideas unless the ideas are actually used by a defendant." *McGhan¸* 608 F. Supp. at 286.

   None of these elements is properly alleged by the Amended Complaint. The allegations are, at best, unadorned parroting of the legal elements of the cause of action, with no supporting facts. (*See* Am. Compl. ¶¶ 74, 75.) Nowhere does the Amended Complaint identify a single "idea" of Plaintiff's—much less a novel or original one—or specify how either Defendant has used it. Nor are any of the circumstances of the alleged misappropriation identified, including the existence of the requisite relationship between Defendants and Plaintiff at the (unspecified) time Plaintiff's idea was allegedly "used." Accordingly, Claim VIII fails to state a claim for misappropriation and must be dismissed.

**I.**   **Claim IX (Count X in Plaintiff's Amended Complaint), Asserting a Violation of § 14.03 of the New York Artists' Authorship Rights Act ("AARA"), Must Be Dismissed.**

   The claim that the appearance of Plaintiff's "copyrighted designs" on the Defendants' website without proper credit violates § 14.03 of the New York Artists' Authorship Rights Act ("AARA") must be dismissed, because it is well-settled that AARA is pre-empted by the federal Visual Artists Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A (2000). (*See* Am. Compl. ¶ 77 (citing N.Y. Arts & Cult. Aff. Law § 14.03(2)(a)), ¶ 80.) VARA provides to "the author of a work of visual art" the right "to claim authorship of that work." 17 U.S.C. § 106A (a)(1)(A). Section 301 of the Copyright Act *expressly* pre-empts all common law or state statutes that grant the same

rights or any equivalent to the rights set out in Section 106A.[28]  This Court has

determined that the attribution rights contained in VARA and AARA (which purports to

grant an artist "the right to claim authorship") are equivalent.  *Bd. of Managers of SoHo

Int'l Arts Condo.* v. *City of New York*, No. 01-1226, 2003 WL 21403333 at *15 n.19

(S.D.N.Y. June 17, 2003).  AARA thus being pre-empted here, Plaintiff cannot state a

valid claim under that statute.

**J.      Request for Injunction.**

        The Amended Complaint purports to request a TRO and a permanent

injunction.[29] (Am. Compl. ¶ 82.)  In order to obtain a TRO, the party seeking relief must

establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or

(2) sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly toward the [requesting] party."

*Spencer Trask Software & Info. Servs.* v. *RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580

(S.D.N.Y. 2002).  Irreparable harm requires the movant "to establish not a mere

*possibility* of irreparable harm, but that it is *likely* to suffer irreparable harm if equitable

relief is denied."  *Id.* at 581(emphasis in original) (internal quotations omitted).

        None of these requisites appear from the Amended Complaint.  As

discussed above, Plaintiff's failure to plead sufficient facts for Claims I through IX to

survive the pleading stage makes success on the merits highly *unlikely*.  Nor does the

Amended Complaint make any showing—or even offer a hint—as to how Plaintiff could

---

[28] "[A]ll legal or equitable rights that are equivalent to any of the rights conferred by section 106A with
respect to works of visual art to which the rights conferred by section 106A apply are governed exclusively
by section 106A . . . . Thereafter, no person is entitled to any such right or equivalent right in any work of
visual art under the common law or statutes of any State." 17 U.S.C. § 301(f)(1).

[29] *See supra* note 8 (addressing Plaintiff's request for permanent injunction).

be irreparably injured absent emergency injunctive relief. Plaintiff's failure to have moved for a TRO during the more than six months since she filed suit belies any need for the status quo to be preserved pending the Court's ruling on the merits. Indeed, Plaintiff's contract was terminated nearly a year ago, and never in that time has she done anything other than talk about seeking injunctive relief.[30] For all of these reasons, Plaintiff's request for injunctive relief must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that their Motion for Judgment on the Pleadings be granted.

Respectfully submitted,

_____/s/_____
Margaret K. Pfeiffer (MP4552)
Rita M. Carrier (RC3847)
Susan K. Nash (SN1123)

1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-5805
Tel.:  (202) 956-7500
Fax:  (202) 293-6330

*Attorneys for Defendants/Counterclaimants*
The Battery Conservancy and Ms. Warrie Price

---

[30] During the hearing of November 20, 2007, Ms. Hoffman, Plaintiff's counsel, orally requested a preliminary injunction. (Transcript, p. 4, ll.19-20.) In response, the Court instructed the parties to discuss this issue and to inform the Court how the parties would like to proceed. (*Id.* at 5, ll. 1-4.) As of the date of this Motion, Ms. Hoffman has never again raised the issue of injunctive relief with the Defendants.

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing Memorandum of Law in Support of Defendants'

Motion for Judgment on the Pleadings has been served electronically to counsel to all

parties by ECF, on this third day of March 2008.


_____/s/_____
Rita M. Carrier