BARBARA HOFFMAN (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200 (phone)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA BROUGHEL<br><br>               Plaintiff,<br><br>     v.<br><br>THE BATTERY CONSERVANCY, WARRIE PRICE, CLAIRE WEIZ AND MARK YOES, "DBA" WEISZ + YOES<br><br>               Defendants. | No. 07 Civ. 7755 (GBD)<br><br>ECF Case<br><br>**DECLARATION OF BARBARA BROUGHEL IN SUPPORT OF PLAINTIFF'S MOTION FOR <u>PRELIMINARY INJUNCTION</u>** |

      BARBARA BROUGHEL hereby declares, pursuant to the penalties of perjury under 28 U.S.C. 1746 that the following statements are true and correct.

      1.  I am the Plaintiff in this action, am fully familiar with the facts stated herein and make this declaration in support of Plaintiff's Motion for a Preliminary Injunction and in opposition to Defendants Battery Park and Warrie Price's motion for judgment on the pleadings.

      2.  I am a visual artist practicing for over twenty-five years. I have been the recipient of numerous highly competitive awards and residencies, including a Fulbright, Asian Cultural Council and Bunting Fellowships, and artist-in-residence at Harvard University. I hold degrees from SUNY and The University of California, with additional academic training from The Hartford Art School, The Whitney Museum Independent Study Program and The Institute for

Semiotics and Structural Studies, Toronto.   I have taught at several well known institutions including, MIT from 1994-2000, UNC Chapel Hill and Wesleyan University.

    3.   On or about January 3, 2004, I responded to a Call to Artists to submit proposals for a carousel interior in Battery Park with an aquatic theme for a new carousel to be built.  The Call for Artists provided in pertinent part:

> <u>Contracting</u>:  <u>the selected artist (or team) will contract with the Battery Conservancy.</u>  The carousel will be owned by the City of New York therefore the designs approval must follow the standard process that includes reviews by the City of New York Department of Parks & Recreation, Community Board 1, and the Art Commission.
>
> <u>Gala Presentation</u>:  The Conservancy intends to unveil the project and boost the fundraising campaign at the June 7 Gala, which will have an aquarium theme.  Creating one life-size figure is part of this plan, which will involve the selected artist's immediate participation.
>
> <u>Design Development and Final Design</u>:  It is anticipated that the selected artist will adapt and adjust the design based on comments by the Advisory Committee and the Conservancy.  <u>The artist will also be part of the design team for the carousel and will contribute to the plans for the entire carousel.</u>  The design will also comply with specifications provided by the carousel fabricator.
>
> <u>Fabrication and Installation</u>: The carousel fabricator will be responsible to build and install the carousel.  <u>The artist and architect will advise on the fabrication, review test samples and the fabrication progress.</u> (Emphasis ours.)

4.  On or about April 2004, I was selected by a duly constituted committee independent of the Defendant Conservancy, and awarded the commission based on my proposal which included original and novel designs for carousel figures, floor, lighting, cinematic elements, sound and enclosure. A copy of the text of my proposal is attached hereto as Exhibit A (the "Proposal").

5.  Shortly after I won the artist's competition, the Defendant Architect and I met. She and I expressed our goal to make a holistic and unified sense of cohesion to Sea Glass, Carousel at Battery Park (the "Project"). We discussed how we wanted the Project to have a minimal quality, and that it reflect great design and state of the art lighting and sound elements.

6.  Sometime, months later, we met again. During that meeting the architects stated that they had not wanted an artist and felt they could design the Project without an artist. Nevertheless, Defendant Yoes agreed that the Conservancy had awarded me a significant part of the Project. He admitted that he believed Weiss + Yoes were obliged to accept my role as set forth in the Call for Artists and further clarified in my Proposal and on which basis I had been awarded the commission.

7.  To avoid future problems we made a list of who would have jurisdiction and final approval over what elements of the Project, and which areas would be the subject of consultation. We agreed to consult on any and all aspects which would impact on my area of design or impact on my aesthetic vision as expressed in my Proposal. I, of course, agreed to consult with Defendant Architects as I developed my designs.

8.  My Proposal incorporated a holistic approach, thus, all the interior elements have an interconnected symbiotic relationship with the figures. Since the Project is mostly about light and sound, the relationship between these elements is fragile and complex. I am primarily an

installation artist, and as such, I rarely, if ever design objects without a context, which then becomes a critical component of the artwork. This holistic vision was a core element of my Proposal and, as I was subsequently informed by Jennifer McGregor and members of the Selection Committee, one of the key factors in my selection over the other artists.

9. Throughout the spring and summer of 2005, I contacted the Defendant Architects several times to meet so that we could go over the designs I was developing. Though we exchanged some cordial e-mails, no meeting ever occurred.

10. After, I had put more than a year of work into designs for the carousel interior. Defendant Weiss made several unexpected and unjustified demands. She asserted that the architect should have a hierarchical relation over the artist and anyone else working on the Project. Rather than a design team, Weiss + Yoes claimed the entire Project as theirs.

11. One of the results of the architects' hijacking of my role in the Project as their own was that I was asked, as a favor to the Battery Conservancy to contract for Design Phase I only, as a consultant to the Defendant Architects with the understanding that I still maintained a direct relationship with the Conservancy as anticipated in the RFP. A copy of my contract which was fully performed for Phase I with Defendants Weiss + Yoes is attached hereto as Exhibit B.

12. My Amended Complaint sets forth the facts leading to this litigation and I am informed by my counsel that on this motion they are deemed as true and construed in my favor.

13. With this Declaration, I submit certain additional facts and additional documents to amplify my Amended Complaint in support of my motion for a preliminary injunction.

14. Exhibit C reflects a series of emails between myself and the Defendants Architects, as well as other documents indicative of the Defendant Architects' efforts to eliminate me from the Project and to interfere with my completion of the commission I had been awarded. Part of

4

Exhibit C is a letter dated April 4 to the Battery Conservancy's employee Pat Kirshner. The letter sets forth the problems I am encountering in the fabrication process and the problems I am having getting paid by the Battery Conservancy for work that I had already performed. It also sets forth the particular problems that I am having with the Defendant Architects who have excluded me from participating in the Project and overseeing that any prototypes are in conformance with my artistic requirements as expressed in my designs.

15. From late 2005, the Defendant Architects increasingly interfered with my performance to prevent the realization of my artistic vision as set forth in the Proposal and in the common understanding of Artist, client and art administrator in the public art field.

16. For example, Defendants issued a document without my input and without my consent. It is a document I would never have authorized. In it the artist's role is described as 'the inspiration for the overall concept of the figure design". The fabricator's role is described as "the fabricator/creator of the figures with specific technical expertise in translating a creative vision to functional ride figures". In addition, it suggests that the artist's input would be limited to visual materials only.

17. Exhibit D represents an invoice for work performed during the four and one-half months between November 2005 through March 2006 when I was contracted with Defendant Architects. That invoice was not paid until late July 2006.

18. I completed all the work I was contracted to perform and in addition produced a ¼ scale model and a series of small figures for the Carousel models. Attached hereto as Exhibit E are other invoices submitted to the Conservancy. From the date of the Competition, I received $1,000 with the other finalists to submit a proposal. I then received $5,000 for work connected with fundraising, for which I billed $28,000, leaving a debt of the Conservancy for $23,000. From

April 2004 until January 2006, this was the only money I received for almost one year and one-half of work.

19. In or around January or February 2006, I received separate payments under the Phase I contract for about $18,000.

20. Although as set forth in the letter agreement attached hereto as Exhibit F, signed by Defendant Battery Conservancy on July 12, 2006, states that I had completed all work as set forth in my April 2006 invoice, I was not paid until after this letter. That check the Defendants now claim <u>falsely</u> as an advance payment.

21. Defendants claim they have not infringed my copyrights; however, they admit use of my copyrighted designs on their websites without my permission and with false attribution at least until October 28, 2007. Exhibit G discusses the designs I provided to Defendants.

22. Attached hereto as Exhibit H are my copyrighted images which appeared on the websites. I have handwritten on that image the designs and concepts taken from my Proposal and designs.

23. I request discovery to determine other unauthorized uses of my intellectual property.

24. I have been accused of not knowing how to do CAD drawings in Defendants' Answer. CAD drawings are used by architects. Artists do not regularly use CAD drawings and many of us work by the development of models based on our initial conceptual designs.

25. The Defendants' reference to a Letter Agreement in July of 2006, outlining future work we agreed to perform on the Project was never intended as a "contract". It was simply intended as an agreement to produce a new prototype and move forward with the terms of Phase II, to be negotiated based on an outline provided by me of the steps necessary for this phase.

26. At no time did I agree to perform the work for Phase II, or provide "schematic, scalable" designs for each of the Carousel figures without a contract and compensation. It was the obligation of the Defendants Price and the Battery Conservancy to negotiate that agreement in accordance with the award of my commission.

27. Exhibit 6 attached to Defendant Conservancy's answer was scale-model information I provided to the Conservancy for the purposes of assisting them in their efforts to make a full-scale cardboard mockup of the Carousel floor.

28. I request that this Court order that I be permitted to complete the commission I was awarded, which commission was approved by all relevant government entities.

29. The arbitrary, mean spirited termination of my commission without cause and without due process has violated my intellectual property, contract and other rights.

30. I will suffer irreparable harm to my reputation and professional career as a result of the false allegations and wrongful termination of my commission.

31. I urge that this Court grant Plaintiff's Motion for a Preliminary Injunction and deny Defendants' Motion for Judgment on the Pleadings. If the Court grants such motion, I respectfully request leave to file a second amended complaint so that this case can proceed to summary judgment or go to trial.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 28, 2008, Westport, Connecticut

_____
BARBARA BROUGHEL