# THE HOFFMAN LAW FIRM
## 330 WEST 72ND STREET
New York, New York 10023

*Telephone: (212) 873-6200*                    *Facsimile: (212) 974-7245*

---

### FACSIMILE TRANSMITTAL

**DATE:**      May 10 2008

**TO:**      Margaret Pfeiffer, Esq.      **FAX:**      202.293.6330

**CC:**      Jarrett M. Behar, Esq.      **FAX:**      631.650.1207

**RE:**      Barbara Broughel v. The Battery Conservancy, et al.
1:07-cv-7755

NO. OF PAGES (INCLUDING TRANSMITTAL) 3

--------------------------------------------------------------------------------
MESSAGE/SPECIAL INSTRUCTIONS:

My assistant had a problem e filing we will speak to the Court first thing on Monday and file. In the interim so that you are not disadvantaged I am sending the documents without exhibits as they will not fax. I apologize but I myself do not word process or know anything about computer filing

With profound apology,

Sincerely yours,
Barbara Hoffman

--------------------------------------------------------------------------------
NOTE: This message is intended only for the use of the individual or entity to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

## Replies, Opposition and Supporting Documents

1:07-cv-07755-GBD Broughel v. The Battery Conservancy et al

ECF

Warning: The transaction you submitted has already been accepted and posted by this system. If your original submission contained an error, you must contact the court for further instructions on how to void it. If this submission was inadvertently submitted (clicking on the Next link on the previous page twice), you may find details about your original submission by viewing your transaction log. Additional information follows:

| | |
|---|---|
| Transaction Id | 3602697 |
| Date/Time of Submission | 2008-05-09 20:07:59 |
| User Name | Hoffman, Barbara |
| Case Number | 1-07-cv-7755 |
| Document Number | 53 |
| Text | **REPLY MEMORANDUM OF LAW in Support re: [45] CROSS MOTION for Preliminary Injunction.** *Reply Memorandum of Law in Further Support of Plaintiff's Motion for a Preliminary Injunction.* **Document filed by Barbara Broughel. (Hoffman, Barbara)** |

error:stopCheckLog
Error call to backend server failed with (error:stopCheckLog
)

BARBARA HOFFMAN (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200 (phone)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA BROUGHEL<br><br>Plaintiff,<br><br>v.<br><br>THE BATTERY CONSERVANCY, WARRIE PRICE, CLAIRE WEISZ AND MARK YOES, "DBA" WEISZ + YOES<br><br>Defendants. | No. 07 Civ. 7755 (GBD)<br><br>ECF Case |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT..................................................................1

ARGUMENT.........................................................................................2

I.    PLAINTIFF MEETS THE TEST FOR A PRELIMINARY INJUNCTION ON
      HER CLAIM FOR COPYRIGHT INFRINGEMENT...............................2

      A.    THE STANDARD .................................................................2

      B.    PLAINTIFF HAS MADE A SHOWING OF
            IRREPARABLE HARM ..........................................................4

      C.    PLAINTIFF HAS SHOWN A PROBABILITY OF SUCCESS ON
            THE MERITS OF HER COPYRIGHT INFRINGEMENT CLAIM......5

            1.    Plaintiff's Pleadings Meets the Standard of Fed. R. Civ. P.8....5

            2.    The Merits .................................................................5

II.   A PRELIMINARY INJUNCTION IS WARRANTED ON THE CLAIM
      FOR SUBMISSION AND MISAPPROPRIATION OF IDEAS...................9

      A.    THE MERITS ......................................................................9

III.  PLAINTIFF WILL SUFFER IRREPARABLE HARM TO HER
      REPUTATION AND CAREER IF ANY INJUNCTION DOES NOT ISSUE........10

IV.   LOCAL LAW 65 (1982) REQUIRES THAT A PRELIMINARY
      INJUNCTION BE GRANTED.......................................................11

      A.    THE SELECTION OF TSYPIN WAS MADE IN VIOLATION
            OF THE REQUIREMENTS OF LOCAL LAW 65.........................11

V.    PLAINTIFF'S BREACH OF CONTRACT CLAIM.............................12

      A.    PLAINTIFF'S CONTRACT OR IMPLIED IN FACT CONTRACT...........12

      B.    SPECIFIC PERFORMANCE AS AN EQUITABLE REMEDY.............14

      C.    IRREPARABLE HARM AND UNIQUENESS..............................15

i

VI.    THE PUBLIC INTEREST DECIDEDLY FAVORS PLAINTIFF...................................15

CONCLUSION ...........................................................................................................16

ii

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*ABC v. Warner Wolf, et al.*
  76 A.D.2d 162; 430 N.Y.S.2d 275 (1st Dept. 1980) ............................................. 12

*Apfel v. Prudential-Bache Securities, Inc.*
  81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E2d 1095 (1993)............................... 9

*Arthur Guinness & Sons, PLC v. Sterling Pub. Co.*
  732 F.2d 1095, 1099 (2d Cir. 1984).................................................................... 3

*Bourne Co. v. Tower Records*
  976 F.2d 99, 101 (2d Cir. 1992)......................................................................... 4

*Brenntag Int'l Chems., Inc. v. Bank of India*
  175 F.3d 245, 249 (2d Cir. 1999)....................................................................... 3

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*
  150 F.3d 132, 137 (2d Cir. 1998)....................................................................... 8

*Christie-Spencer Corp. v. Hausman Realty Co.*
  118 F. Supp. 2d 408, 417 (S.D.N.Y. 2000)........................................................ 2

*Clifford Ross Co. v. Nelvana, Ltd.*
  710 F. Supp. 517, 521 (S.D.N.Y. 1989)............................................................. 4

*Elektra Entertainment Group In v. Rae Schwartz*
  2008 U.S. Dist. Lexis 26183 ............................................................................. 5

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*
  499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)......................... 6

*Filner v. Shapiro*
  633 F.2d 139, 143 (2d Cir. 1980)....................................................................... 13

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*
  443 F.2d 1159, 1162 (2d Cir. 1911).................................................................... 8

*Grand Union Co. v. Cord Meyer Dev. Co.*
  761 F.2d 141, 147 (2d Cir. 1985)....................................................................... 3

*Hamil Am., Inc. v. GFI*
  193 F.3d 92, 99 (2d Cir. 1999)............................................................................ 6

iii

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.* ................................................................... 6
  780 F.2d 189, 192 (2d Cir. 1985) .........................................................................

*Home Box Office, Inc. v. Northland Communications Corporation et al.* ..................... 2
  1987 U.S. Dist. Lexis 16715 ...............................................................................

*Jorgensen v. Epic/Sony Records* ................................................................................... 6
  351 F.3d 46, 51 (2d Cir. 2003) ...........................................................................

*Joseph Scott Co. v. Scott Swimming Pools* ................................................................. 2
  764 F.2d 62, 67 (2d Cir. 1985) ...........................................................................

*King v. Innovation Books* ............................................................................................ 4
  976 F.2d 824, 831 (2d Cir. 1992) ......................................................................

*Leberman v. John Blair & Co.* ................................................................................... 13
  880 F.2d 1555, 1560 (2d Cir. 1989) ..................................................................

*Louis Vuitton Malletier v. Dooney & Bourke* ........................................................ 2, 3
  Inc. 454 F.3d 108, 114 (2d Cir. 2006) ..............................................................

*Metro-Goldwyn-Mayer Studios Inc v. Grokster, Ltd.* .............................................. 7
  545 U.S. 913, 924 2005 ....................................................................................

*N US v. Blue Circle, Inc.* .......................................................................................... 14
  793 F.Supp. 52 (N.D.N.Y. 1992) ......................................................................

*Nadel v. Play by Play Toys and Novelties, Inc.* ......................................................... 9
  208 F.3d 368 (2d Cir. 2000) ..............................................................................

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.* ........................................... 8
  166 F.3d 65, 70 (2d Cir. 1999 ...........................................................................

*Playboy Enters. v. Chuckleberry Publishing* ............................................................. 4
  486 F. Supp. 414, 434-35 (S.D.N.Y. 1980) .......................................................

*Porter v. Lee* .............................................................................................................. 2
  328 U.S. 246, 251 (1946) ...................................................................................

*Reuters Limited v. UPS International* ...................................................................... 11
  903 F.2d 904 (2d Cir. 1990) ..............................................................................

*See Random House, Inc. v. Rosetta Books LLC* ........................................................ 4
  283 F.3d 490, 491 (2d Cir. 2002) ......................................................................

iv

*Shapiro, Bernstein & Co. v. H.L. Green Co.* ........................................................... 7, 8
    316 F.2d 304, 307 (2d Cir. 1963)......................................................

*Softel, Inc. v. Dragon Medical and Scientific Communication* ..............7
    118 F.3d 959, 971 (2d Cir. 1997)......................................................

*Sony Corp of America v. Universal Studies* ........................................................... 7
    464 U.S. 417 (1983)......................................................

*Sygma Photo News, Inc. v. High Soc. Magazine, Inc.* ....................................... 8
    118 F.2d 89, 92 (2d Cir. 1985)......................................................

*Time Warner Cable v. Bloomberg L.P.* ............................................................... 3
    118 F.3d 917, 923 (2d Cir. 1997)......................................................

*Tom Doherty Assoc. v. Saban Entm't* ............................................................. 3, 11
    60 F.3d 27, 34 (2d Cir. 1995)......................................................

*Tough Traveler, Ltd. v. Outbound Products* ..................................................... 4
    60 F.3d 964, 967-68(2d Cir. 1995) ......................................................

*Yurman Design, Inc. v. PAJ, Inc.* ..................................................................... 6
    262 F.3d 101, 110 (2d Cir. 2001)......................................................

## STATUTES

Local Law 65 (1982)......................................................................................... 11

Fed. R. Civ. Proc. Rule 12(c)............................................................................ 2

Fed. R. Civ. P.8................................................................................................ 4

New York Artist's Authorship Rights Act Article 14 ........................................15

## OTHER AUTHORITIES

Bryan A. Garner, Black's Law Dictionary 1448 (8th ed. 2004)........................ 3

Plaintiff Barbara Broughel ("Plaintiff") by and through her undersigned counsel, respectfully submits this Memorandum of Law in Reply to the Opposition to the Motion for a Preliminary Injunction submitted by the Defendant Battery Conservancy, Defendant Warrie Price and Defendant Weisz + Yoes (collectively, the "Defendants").

## PRELIMINARY STATEMENT

Barbara Broughel is a widely recognized professional visual artists practicing for over twenty-five years. In 2004, she was awarded a commission on the basis of her "novel concepts and original designs" (the "Proposal") to participate as a member of the design team to design the interior of the Sea Glass Carousel at the Battery (the "Project"). In April 2007, she was terminated. The Defendants have removed her name from the Project; notwithstanding, they continue to display and reproduce her copyrighted expressions and in February 2008 entered into a schematic design contract with George Tsypin Opera Factory for the production and design of the ride expressive of her artistic vision. Her arbitrary and capricious termination threatens her first class reputation as an artist and the professional credibility she has established over the years (See Broughel Declaration in Further Support and Declaration of Dale M. Lanzone.)

Plaintiff will suffer irreparable harm not compensable in money damages if Defendants are allowed to continue using her novel ideas and the public believes she was terminated from the Project for cause. Plaintiff is entitled to a preliminary injunction (i) enjoining the Defendants from using Plaintiff's copyrighted designs, (ii) proceeding to complete the Project until a trial on the merits or a dispositive motion, (iii) contracting with Tsypin or another artist who exploits Plaintiff's novel ideas and original designs, and (iv) proceeding with the Project without appropriate credit to Plaintiff.

1

Plaintiff's papers, including the Declarations of Barbara Broughel, Barbara Hoffman, Theodore Berger, Frederieke Taylor and Dale M. Lanzone, submitted in support or in further support of the motion, the Memorandum of Law and the documents attached thereto and the pleadings when viewed in the light most favorable to Plaintiff establish that Plaintiff has met the standards for preliminary injunctive relief.

As for Defendants' claim of laches, it is well settled that a mandatory injunction is appropriate to restore the status quo ante when, as here, a party with notice of a pending claim for an injunction performs an action sought to be restrained in those proceedings, e.g., *Porter v. Lee 328 U.S. 246, 251 (1946)*; *Home Box Office, Inc. v. Northland Communications Corporation et al.* 1987 U.S. Dist. Lexis 16715.

A preliminary injunction is a specific equitable remedy and thus must be framed in such a way as to strike a delicate balance between competing interests" *Louis Vuitton Malletier v. Dooney & Bourke*, 454 F 3rd 108 (2d. Cir 2006). *See Joseph Scott Co. v. Scott Swimming Pools*, 764 F.2d 62, 67 (2d Cir. 1985). Plaintiff's motion is not barred by laches.

## ARGUMENT

I.  **Plaintiff Meets the Test for A Preliminary Injunction on Her Claim For Copyright Infringement.**

A. **The Standard.**

A preliminary injunction is "an extraordinary and drastic remedy that will not be granted absent a clear showing that the [moving party] has met its burden of proof." *Christie-Spencer Corp. v. Hausman Realty Co.*, 118 F. Supp. 2d 408, 417 (S.D.N.Y. 2000). To prevail on a motion for a preliminary injunction, the moving party must demonstrate (1) a threat of irreparable injury and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation, as well as a

2

balance of hardships tipping decidedly in the moving party's favor. *See, e.g., Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 923 (2d Cir. 1997). *Louis* Vuitton, supra.(p.113-114). Irreparable injury exists where, but for the granting of the preliminary injunction, it would be difficult or impossible to return the parties to the positions they previously occupied. *See Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

A trial court has discretion to fashion a preliminary injunction that will preserve the status quo pending a trial on the merits. *Arthur Guinness & Sons, PLC v. Sterling Pub. Co.*, 732 F.2d 1095, 1099 (2d Cir. 1984); *see also Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985).

The Defendants in their opposition papers argue that to the extent that they are being asked to do something, Plaintiff is not asking for the preservation of the status quo. The Second Circuit has repeatedly cautioned that "'[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities or critics.'" *Louis Vuitton Malletier v. Dooney & Bourke, Inc.* 454 F.3d 108, 114 (2d Cir. 2006) (quoting *Tom Doherty Assoc. v. Saban Entm't*, 60 F.3d 27, 34 (2d Cir. 1995). Black's Law Dictionary defines the term "status quo" simply as "[t]he situation that currently exists." Bryan A. Garner, Black's Law Dictionary 1448 (8th ed. 2004).

The Defendants, therefore, argue that to the extent Plaintiff requests reinstatement, the elevated standard of "clear and substantial likelihood of success on the merits must apply. Assuming *arguendo*, the heightened standard is appropriate to reinstate Plaintiff, Plaintiff believes she meets this standard. However, it cannot be claimed that a prohibition on the use of Plaintiff's novel ideas, the hiring of a competing artist and the unauthorized use of her

3

copyrighted expression, "orders an affirmative act or mandates a specified course of conduct." Thus, the non-heightened standard applies to this part of Plaintiff's motion.

**B.    Plaintiff Has Made a Showing of Irreparable Harm.**

In the Second Circuit, a prima facie case of copyright infringement generally gives rise to a presumption of irreparable harm. *See Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002). ("When a plaintiff establishes a prima facie case of copyright infringement, irreparable harm is presumed."); *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 967-68(2d Cir. 1995) (same in trademark and trade dress context).

Thus, "the requirement of proof of irreparable harm can in such a case effectively be met by proof of a likelihood of success on the merits." This presumption exists because where illegal copying has occurred, the confusion created in the marketplace will often damage the copyright holder in incalculable and incurable ways. *See Bourne Co. v. Tower Records*, 976 F.2d 99, 101 (2d Cir. 1992).

A delay in filing suit will not rebut the presumption of irreparable harm if the plaintiff does not know how severe the infringement is. *See Clifford Ross Co. v. Nelvana, Ltd.*, 710 F. Supp. 517, 521 (S.D.N.Y. 1989), aff'd without opinion, 883 F.2d 1022 (2d Cir. 1989); *see also Playboy Enters. v. Chuckleberry Publishing*, 486 F. Supp. 414, 434-35 (S.D.N.Y. 1980) (noting that "parties should not be encouraged to sue before a practical need to do so has been clearly demonstrated"). Similarly, a delay caused by a plaintiff's good faith efforts to investigate an infringement does not rebut the presumption of irreparable harm. *See King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992) (author's eight-month delay in filing claim did not rebut presumption of irreparable harm because he spent that time trying to obtain a copy of the infringing screenplay and movie).

4

**C.  Plaintiff Has Shown a Probability of Success On
The Merits of Her Copyright Infringement Claim.**

**1.  Plaintiff's Pleading Meets the Standard of Fed. R. Civ. P.8.**

Plaintiff believes the recent decision in *Elektra Entertainment Group In v. Rae Schwartz*

2008 U.S. Dist. Lexis 26183 is appropriately applied to the pleadings in this case.

> In particular, it was held that, the complaint's failure to describe specific
> individual instances of infringement is not fatal to plaintiffs' claim; such
> details are rightly the province of the discovery phase and summary
> judgment. Indeed it would be difficult, as a practical matter, for plaintiffs
> to allege the exact times at which Goldshteyn downloaded particular
> recordings.  Goldshteyn, 2006 U.S. Dist. LEXIS 52422.

> In this case, it is clear that the complaint alleges enough facts to constitute
> a plausible claim of copyright infringement, and, thus, is distinguishable
> from the Twombly complaint. The complaint found insufficient in
> Twombly made allegations of conscious parallelism - from which an
> antitrust conspiracy could have been inferred - but lacked factual
> allegations in connection with a specific agreement or contract. By
> contrast, the complaint in this case names the copyrighted recordings that
> were allegedly infringed and describes the manner in which they were
> infringed. Indeed, if these allegations in the complaint are proven true,
> under no circumstances will Schwartz not have infringed plaintiffs'
> copyrights. Therefore, the complaint certainly raises a "reasonable
> expectation that discovery will reveal evidence" of infringement. See id.
> Accordingly, the copyright infringement claim alleged by the plaintiffs
> here is more plausible than the antitrust conspiracy claim alleged in
> Twombly. Plaintiffs were not required to allege specific, individual
> instances of infringement, which, as Goldshteyn held, is rightly the
> province of the discovery phase and summary judgment. At this stage of
> the litigation, it is sufficient that the plaintiffs have alleged enough facts to
> support a claim of copyright infringement that is at least plausible.
> Although Plaintiff in her pleadings and papers against the Defendants argued for a

preliminary injunction on her copyright claims, Defendants oppose in only the most general

terms, Plaintiff's request for relief with respect to claims of copyright infringement.

**2.  The Merits.**

To succeed on a copyright infringement claim, plaintiffs must establish "(1)

ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991); *see Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985). The issuance of a certificate of registration for a copyright is prima facie evidence of the validity of the copyright. See id.   The Plaintiff has submitted a certificate of registration for the Sea Glass Group.

To satisfy the second element, the copyright owner must demonstrate "'(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiffs.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 110 (2d Cir. 2001) (quoting *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)). Actual copying may be established by either direct evidence of copying or circumstantial proof of copying, consisting of evidence that the alleged infringer had access to the protected work and "that there are similarities between the two works that are probative of copying." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). There is no dispute that Defendants had access to Plaintiff's copyrighted designs.

The Declaration of Barbara Broughel in support of the Motion and the Declaration of Barbra Broughel in Further Support of the Motion make it patently clear that Defendants' continue to use Plaintiff's copyrighted expression on their website, in marketing materials and on the YouTube video, despite Defendants' representation to the contrary. Defendants Weisz + Yoes claim that only the Conservancy has made unauthorized use of the Sea Glass Creatures which are included in the Registration Statement attached to the Amended Complaint and cannot be held to have infringed.  Plaintiff disagrees.

It is respectfully submitted that even if the Court were to apply the more elevated standard of a showing of "clear or substantial likelihood of success on merits," the identical reproduction and display of Plaintiff's copyrighted designs meets this test.

The claim of license is specifically contradicted by the documents (See AIA contract prohibiting use of Plaintiff's designs and the Artist Orientation Outline which only provides for use for "documentation," not reproduction on the internet or on the Project.

Although 17 U.S.C. 101 et seq. 1976 (the "Copyright Act") does not by its explicit terms render anyone liable for infringement committed by another, the absence of such express language does not preclude the imposition of copyright infringements on certain parties who have not themselves engaged in the infringing activities, since vicarious liability is imposed in virtually all areas of the law and the concept of contributory infringement is merely a species in which it is just to hold one individual accountable for the actions of the other. *See Sony Corp of America v. Universal Studies* 464 U.S. 417 (1983); *See also Metro-Goldwyn-Mayer Studios Inc v. Grokster, Ltd.* 545 U.S. 913, 924 2005.

It is enough to state a claim against Defendants Warrie Price and Weisz + Yoes for vicarious or contributory liability for infringement of Plaintiff's copyrighted expression, as Plaintiff Broughel has done in her several Declarations and the allegations and documents attached to her Amended Complaint, that these Defendants had a "right and ability to supervise" the violations and that they had a strong financial interest in such activities. *Softel, Inc. v. Dragon Medical and Scientific Communication* 118 F.3d 959, 971 (2d Cir. 1997) (individual liability for copyright infringement); *See also Shapiro, Bernstein & Co. v. H.L. Green Co.* 316 F.2d 304, 307 (2d Cir. 1963).

7

A party may be liable for contributory copyright infringement if the party "induces, causes or materially contributes to the infringing conduct of another" with knowledge. *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1911). "All persons and corporations who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers." *Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 118 F.2d 89, 92 (2d Cir. 1985).

A party may be held vicariously liable for copyright infringement "when the right and ability to supervise[] coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials .." *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963).

Plaintiff has shown a probability success on the merits of her infringement claim because Defendants have reproduced, displayed and created derivative works from Plaintiff's Sea Glass registered designs. The designs of Plaintiff which are reproduced and displayed are identical or "substantially similar" to the designs attached to the Registration Statement of Amended Complaint.

To prevail on a copyright infringement claim, a plaintiff must prove *inter alia* that "the second work bears ' substantial similarity' to protected expression in the earlier work." *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). "The standard test in determining substantial similarity is the 'ordinary observer test': whether an average lay observer would overlook any dissimilarities between the works and would conclude that one was copied from the other." *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 70 (2d Cir. 1999. "The substantial similarity test is limited to the particular original selection or arrangement afforded protection and does not extend to the facts themselves."

8

II.   **A Preliminary Injunction Is Warranted On the Claim for Submission and Misappropriation of Ideas.**

A.   **The Merits.**

In *Nadel v. Play by Play Toys and Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000), the Second Circuit summarized the New York law of submission and misappropriation of ideas.

> Our analysis begins with the New York Court of Appeals' most recent discussion of the law governing idea submission cases. *Apfel v. Prudential-Bache Securities, Inc.*, 81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E2d 1095 (1993). In *Apfel*, the Court of Appeals discussed the type of novelty an idea must have in order to sustain a contract-based or property-based claim for its uncompensated use. Specifically, *Apfel* clarified an important distinction between the requirement of "novelty to the buyer" for contract claims, on the one hand, and "originality" (or novelty generally) for misappropriation claims, on the other hand.

> The Apfel court explicitly discussed the pre-disclosure contract scenario present in the instant case, where "the buyer and seller contract for disclosure of the idea with payment based on use, but no separate postdisclosure contract for the use of the idea has been made." *See Apfel*, 81 N Y.2d at -I77-78.

> While an idea may be unoriginal non-novel in a general sense, it may have substantial value to a particular buyer who is unaware of it and therefore willing to enter into contract to acquire and exploit it. *See Apfel*, 81 N.Y.2d at 475-76.

Plaintiff claims that she is likely to succeed on the merits of her "implied in contract" or express contract claim against the Defendants.

A review of the Conservancy website exhibits attached to the several Broughel Declarations, including her Proposal, and the Declaration of Theodore Berger, show beyond peradventure that Defendants have incorporated Plaintiff's novel ideas as expressed in her proposal, including the fiber optic lighting from within of the resin figures, without credit or compensation to Plaintiff.

9

Moreover, a comparison of the work of George Tsypin Opera Factory ("Tsypin") suggests that he was selected as a "producer of the ride," because the total concept and feel of his work approximates the novel and original ideas which Plaintiff introduced to the Defendants.

Enjoining the Defendants from entering into further contracts with Tsypin would prevent further irreparable harm to Plaintiff by the injury to her reputation and good will. Further, whether and the extent of the appropriation of her novel ideas is a fair ground for litigation. The New York Supreme Court in 1993 granted a preliminary injunction against a noted columnist who had entered into a highly compensated exclusive contract with the Daily News. The court stated,

> The essence of art is expression of ideas that are unique to the writer. It is this novelty of expression, the product of a creative mind, this embellishment of skeleton "ideas" that give rise to a writer's uniqueness. Defendant unquestionably possesses such ability, and his great ability has been so widely recognized as to give credence to the claim of uniqueness. Given the facts set forth in the moving papers, plaintiff has, prima facie, established that defendant is unique. (N.Y.L.J. Sept. 16 1993).

The public interest is not served by the actions of the Conservancy in depriving New York City of Plaintiff's vision.

## III.    Plaintiff Will Suffer Irreparable Harm to Her Reputation and Career If Any Injunction Does Not Issue.

Plaintiff sets forth in her Declaration the harm to her reputation, good will and career if she is wrongfully terminated from the Project, a harm which will be exacerbated if Defendants are permitted to move forward with someone who works in her style and incorporates her novel ideas in the context of the fabrication of the interior of a carousel. Such ideas represent a radical departure from our common understanding of the traditional carousel and the experience of "bobbing up and down on wood horses," seeing only the "behind in front."

A clear showing that a product that a plaintiff has not yet marketed is a truly unique opportunity for a company." *Tom Doherty Assoc. v. Saban Entm't*, 60 F.3d 27, 38 (2d Cir. 1995). In the instant case, the Plaintiff has shown that the Sea Glass Carousel Project represents a sufficiently unique opportunity to warrant a finding of irreparable injury.

The Declaration of Patricia Kirshner submitted by the Defendants supports Plaintiff's claim for a preliminary injunction. First, contrary to Defendants' laches argument discussed in Section III, (A speculative loss could have caused immediate irreparable harm: news service ordered to continue its contractual relationship.) (*Reuters Limited v. UPS International* 903 F.2d 904 (2d Cir. 1990)

## IV. Local Law 65 (1982) Requires That A Preliminary Injunction Be Granted.

### A. The Selection of Tsypin Was Made In Violation of The Requirements of Local Law 65.

Tsypin has not entered into a further agreement but has completed <u>only</u> a schematic design phase.

On May 19, 2007, Defendants will seek approval of Tsypin's schematic proposal from the Arts Commission using Plaintiff's novel designs and ideas.

At the time Plaintiff was selected as an artist to participate on a design team and design the interior of the carousel, the Sea Glass Carousel, the Battery was financed by private funds. The Court is respectfully requested to take judicial notice of the fact that Sea Glass now involves 8 million dollars of New York City funds. Attached to the Declaration of Barbara Hoffman is Local Law 65 and the implementing regulations. It is submitted that the Percent for Art Ordinance applies.

11

The Conservancy has failed to act with the transparency and in accordance with the duly enacted laws and ordinances of the City of New York, including the Percent for Art Ordinance.

Assuming arguendo, Plaintiff is not entitled to be reinstated to finish the interior of Sea Glass, the procedures required by Local Law 65 should be followed.

Therefore, the Court should enjoin Defendants from entering into any contracts or engaging in any proceedings before Governmental bodies in what is a brazen act of circumvention of New York's artist selection procedures for public art projects.

In considering whether Plaintiff is entitled to equitable relief, Plaintiff stresses equity's traditional role in fashioning a remedy appropriate to the case before, it. Plaintiff asks this Court to exercise its ingenuity to find the resolution which is most just even though no precedent on the precise question is ascertainable. *See ABC v. Warner Wolf, et al.*, 76 A.D.2d 162; 430 N.Y.S.2d 275 (1st Dept. 1980).

## V.    Plaintiff's Breach of Contract Claim.

### A.    Plaintiff's Contract Or Implied In Fact Contract.

A contract may be implied in fact from the presumed intention of the parties as indicated by their conduct, e.g. *Nadel. supra.*

Plaintiff has alleged that the Artist Orientation Outline set forth a framework for the terms of the contract. In accepting the Commission, Plaintiff relied on these representations.

The parties' further intent is expressed in the "Acceptance Letter" of Ms. Price to Plaintiff which speaks about entering into contracts in further phases until the completion of the Project. As an accommodation to the Conservancy, Plaintiff entered into the first phase of the contract with Defendants Weisz + Yoes. A review of the AIA contract shows that Weisz + Yoes

12

acted on behalf of the Defendant Conservancy. When Weisz + Yoes terminated Plaintiff, she continued to work and Defendant Battery Conservancy entered into an interim agreement for the redoing of the failed prototype with the intention that a Phase II contract would be forthcoming.

Plaintiff claims that the reason for the failure was that Weisz + Yoes breached the Artist Orientation Outline and the covenant of good faith fair dealing by preventing her from working with the fabricator as required by the Artist Orientation outline and by refusing to let her collaborate as a member of the design team as set forth in her scope of services in the Artist Orientation Handbook.

Plaintiff submits that she has met the requirement of a likelihood of the success of the merits of her breach of contract or implied contract claim. Alternatively, Plaintiff has raised sufficiently serious questions going to the merits of her claim to make them a fair ground for litigation, and she respectfully submits the balance of hardships tip in her favor as described in VI.

Although Defendants claim that they will suffer potential loss of funds if the injunction is granted, the public will suffer if the Conservancy is permitted to act in the lawless manner it has. Plaintiff does not dispute that the Conservancy has excelled at raising money. Such fact, however, has blinded the City bureaucracy to its flaws. This Court should not be so blinded.

Plaintiff worked for three years without pay while the Conservancy raised money, based on her novel ideas and copyrighted deigns. Plaintiff was asked to donate and did donate more than forty thousand dollars in pro bono services not within her scope of services, on the representation and in reasonable reliance that she would complete the Project from which she has been arbitrarily and without justification terminated.

13

She categorically denies in her Declaration that she has been responsible for delays and failed to produce models. Plaintiff believes the balance of hardships tips in her favor.

A covenant of good faith and fair dealing is implied in every contract governed by New York law. *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir. 1989) (citing *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980). That covenant precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement. Id. This describes exactly what has occurred here in that defendant has clearly not dealt fairly with the plaintiff and has not acted in good faith. Defendants failed to cooperate with Plaintiff, including not providing specifications for the Carousel mechanism as required by the Artist Orientation Package and cannot now be permitted to preclude Plaintiff's right to compensation under the contract or to terminate Plaintiff for non-performance. *NUS v. Blue Circle, Inc.* 793 F.Supp. 52 (N.D.N.Y. 1992).

If as Defendants argue specific performance cannot ultimately be granted to Plaintiff on her breach of contract claim, a proposition with which Plaintiff disagrees, in the interim at this stage, there is ample precedent to enjoin the Conservancy from entering into contracts with others who will pirate her ideas and expression, as noted in the Preliminary Statement.

**B.    Specific Performance as an Equitable Remedy.**

Although Plaintiff does not contest the proposition that equity will generally not enforce by specific performance, contracts for personal services, Plaintiff argues that a commission which is awarded to an artist through professional selection procedures for her unique vision is a sui generis contract. Implicit in the award of the commission is the understanding that the artist will be allowed to complete the commission absent express contract

14

provisions providing the circumstances which may give rise to termination. (See Model Contract, Lanzone Decl.) Therefore, unless cause is proven, the artist has a contractual right implicit from the award of the commission and her acceptance of it to complete the commission. The Artist is an independent contractor commissioned to provide a unique artist vision to the public, not an at will employee as Defendants suggest.

Thus, the facts of this case are distinguishable from the cases refusing to compel an artist to honor a personal service contract or the refusal of equity to compel that an employee be retained by an employer.

The fact that specific performance as an ultimate remedy is justified if Defendants are in breach of their contract, is all the more reason why this Court should restrain the Defendants from contracting which Tsypin since the fact that a party may breach its obligation to a third party should not excuse this remedy.

### C.    Irreparable Harm and Uniqueness.

In the case of *Tom Doherty, et al.*, *Doherty* brought an action for breach of contract and moved for a preliminary injunction. He contended that an injunction was required because the right to publish a certain book presented a unique opportunity for it to establish itself as a major player in the children's book publishing industry. The district court found that Doherty demonstrated he would suffer irreparable harm unless the company who owned the rights to the book was ordered to license to it publishing rights.

### VI.    The Public Interest Decidedly Favors Plaintiff.

New York has determined that art and artists are an essential part of the City's cultural fabric. Both the state and city have enacted legislation protective of artists.[1] It is the legislated

---

[1] NYCLS Art & Cult. Affr. (2008); in particular NYCLS Art & Cult. Affr. @ Article 12-14 (2008); Local Law 65 Percent for Art.

15

policy of this state as expressed in New York's Artist Authorship Rights Act to protect from injury the reputation and moral rights of an artist.

Plaintiff has argued that the law is not preempted. However, regardless of whether or not it is preempted from application in this case, the policy expressed therein which provides for both injunctive relief and damages to protect an artist's reputation from injury is the policy of the State of New York and an expression of the will of the public and in the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that her motion for a preliminary injunction be granted.

Dated: New York, New York
       May 9, 2008

Respectfully submitted,

By: _____

Barbara Hoffman, Esq. (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200

*Attorney for Plaintiff Barbara Broughel*

16

BARBARA HOFFMAN (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York  10023
(212) 873-6200  (phone)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA BROUGHEL<br><br>Plaintiff,<br><br>v.<br><br>THE BATTERY CONSERVANCY, WARRIE PRICE, CLAIRE WEISZ AND MARK YOES, "DBA" WEISZ + YOES<br><br>Defendants. | No. 07 Civ. 7755 (GBD)<br><br>ECF Case |

**DECLARATION OF BARBARA BROUGHEL IN SUPPORT OF PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR A PRELIMINARY INJUNCTION**

I, Barbara Broughel hereby declare, pursuant to the penalties of perjury under 28 U.S.C. 1746 that the following statements are true and correct.

1. I submit this Declaration to put before the Court additional images which illustrate both copyrighted artwork which was provided to the Battery Conservancy.  Attached as Exhibit A are photographs of (i) a Sea Glass Chandelier prototype which was successfully completed by me, and (ii) a colored model of the Lighted Trigger Fish which has been registered as part of the Sea Glass Group and has previously been submitted in black and white.

1

2. One of the attributes of my proposal and the reasons why I was selected was that I provided an holistic approach to the design of the interior of the Carousel while the original concept of Weisz + Yoes was limited to a design for the figures. I envisioned an entire ride experience that involved producing an integration of light, sound, movement – an underwater experience. One of the key themes presented to the Battery Conservancy were my studies going from light to dark with rider. These studies are attached as Exhibit B.

3. Attached as Exhibit C is a YouTube Sea Glass Carousel video fly-through projection which I downloaded on May 6, 2008 from the Battery Conservancy website. The YouTube clearly shows the appropriation of my registered Sea Glass designs, including the 1/12 scale model plus other elements identified on Broughel Design Elements appearing in Sea Glass Carousel video fly-through, copies of which are attached as Exhibit D.

4. Attached as Exhibit E is a resolution of Community Board #1 referred to in the Declaration of Patricia Kirshner submitted in Defendant's Answer to the Motion for a Preliminary Injunction. Noticeably absent from her Declaration and resolution are any images or description of Mr. George Tsypin's work for the Carousel.

5. Attached as Exhibit F is an image of Mr. Tsypin's work from a project called "Building in the Black Void." I do not claim that Mr. Tsypin infringed my copyright through his imagery of the "Building in the Black Void." My claim is that the Battery Conservancy, once presented with my novel and original ideas for the Battery Carousel, and to excuse and hide their inefficient management of the fabrication process, terminated me as a scapegoat and then sought out somebody who could do work similar in feel and concept to the interior design which I put forward in my proposal and the related sketches and illustrations.

2

6. This case is painfully embarrassing to me, and if the public becomes aware that I have been terminated, the first-class reputation and professional credibility I have worked so hard to establish over so many years will be severely damaged. I have no traditional monetary remedy, since no amount of money can fully compensate me for this injury. Indeed its subtle effects can never be fully known. If the Defendants are prevented from continuing with the Sea Glass Carousel and particularly seeking further approvals until this case is resolved, the bright spot of publicity will not shine o my removal. The press to date has not learned of my removal, in part because of Defendants' copyright infringement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 8, 2008
in Westport, Connecticut

BARBARA BROUGHEL

BARBARA HOFFMAN (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200 (phone)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA BROUGHEL<br><br>                    Plaintiff,<br><br>          v.<br><br>THE BATTERY CONSERVANCY, WARRIE<br>PRICE, CLAIRE WEISZ AND MARK YOES,<br>"DBA" WEISZ + YOES<br><br>                    Defendants. | No. 07 Civ. 7755 (GBD)<br><br>ECF Case |

### DECLARATION OF DALE MARTIN LANZONE IN SUPPORT OF PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR A PRELIMINARY INJUNCTION

I, Dale Martin Lanzone hereby declare, pursuant to the penalties of perjury under 28 U.S.C. 1746 that the following statements are true and correct.

1.   My full resume with credentials is attached hereto as Exhibit 1. I am President of International Public Art Ltd. since 9/1/1996. In that capacity, I often work with Marlborough Gallery and other artists in the development and implementation of art projects, sales, exhibitions and other art related matters. I work extensively in developing and obtaining private and public commissions for the artists as well as assisting in contract negotiations, fabrication, installations and exhibitions.

2.    I was the Director of Cultural and Environmental Affairs, General Services Administration (GSA), Public Buildings Service (4/10/87 - 7/21/96) in Washington, DC. I had overall national responsibility for the acquisition, maintenance and conservation of contemporary American art for U.S. Government buildings managed by the General Services Administration. Additionally, I administered the General Services Administration's Historic Preservation Program which consisted of 900 buildings, a fine arts collection encompassing 9500 works of art, the agency's archeological programs, environmental quality program under the National Environmental Protection Act and those programs administered under the American Disabilities Act. I managed 16 professional staff members in Washington, directed two staff members in each of GSA's 11 regions, 2 contracted architectural firms, projects at Georgia Technical University and projects jointly managed by the National Park Service. Projects ranged in scale and complexity from a $11 million archeological project at the Foley Square Federal Office Building site in New York, NY to $3 million in art commissions for the International Trade and Cultural Center in Washington, D.C.

3.    I was Special Assistant to the Director for the National Park Service, Washington, DC. I acted on behalf of and advised the Director and Deputy Director on all facets of National Park Service operations and activities (11/81/10/87).

4.    I was Special Assistant to the Assistant Secretary for Fish and Wildlife and Parks for the Office of the Secretary of Interior, Washington, DC. I advised and assisted the Assistant Secretary in all facets of National Park Service operations and activities (5/85 - 11/85).

5.    Special appointments include: (1) President's Advisory Council on Historic Preservation, Washington, DC, by the Administrator of the General Services Administration (4/94 - 7/95); and (2) President's Committee on the Arts and Humanities, Washington, DC,

serving as committee member representing the Department of the Interior and the General Services Administration (6/85-7/95).

6.    Based on my years of experience in the public art field and experience in working both with public and private commissions for large-scale publicly accessible projects, I am fully familiar with the customs and practices in the field and the contracts that are used by many responsible professional arts administrators and public agencies which commission works of art. I submit this Declaration to put before the Court a certain standard public art agreement. The purpose of this agreement is to indicate the general terms which are often included in such contracts. Of course, every contract is negotiated and artists with more bargaining power than others will have greater say in their ability to negotiate a contract. Attached hereto as Exhibit 2 is a contract prepared by the New York City Bar Association in 1985 and which is a model on which many public arts contracts continue to be based (the "Model Contract").

7.    The Model Contract is submitted to support my Declaration on custom and usage in the public art field and to illustrate what might be called the general structure that is normally applied when an artist is selected to participate either through a percent for art program or another competition in a public art project. The Model Contract is based on a single artist for a fixed fee project with the artwork fabricated offsite. Nevertheless, it's "boiler plate" applies to other typologies of public art commissions. The relevance of the Model Contract will be developed in subsequent paragraphs.

8.    I have also been shown and considered the following documents attached as Exhibits 3 and 4, A Call for Artists and the Artist Orientation Outline ("Artist Orientation Outline") that were used in the Competition to select the Plaintiff for this Project. I understand that the Plaintiff was selected as a finalist and that subsequently she won the competition based

3

on her proposal. I also understand that her proposal was refined and submitted to the

Commissioner of Parks and Recreation, Community Board Number One, and the New York City

Arts Commission, which approved the Proposal. I have been asked to give an opinion on what

the common understanding in the field would be with respect to Exhibits 3 and 4, as they relate

to the commission process.

      9.   Of particular note with respect to the Artist Orientation Outline are the

considerations for the selected artist.

### Considerations for the Selected Artist

**Contracting:** The selected artist (or team) will contract with the Battery
Conservancy. The carousel will be owned by the City of New York therefore the
design approval must follow the standard process that includes reviews by the
City of New York Department of Parks & Recreation, Community Board 1, and
the Art Commission.

**Gala Presentation:** The Conservancy intends to unveil the project and boost the
fundraising campaign at the June 7 Gala, which will have an aquarium theme.
Creating one life-size figure is part of this plan, which will involve the selected
artist's immediate participation.

**Design Development and Final Design:** It is anticipated that the selected artist
will adapt and adjust the design based on comments by the Advisory Committee
and the Conservancy. The artist will also be part of the design team for the
carousel and will contribute to the plans for the entire carousel. The design will
also comply with specifications provided by the carousel fabricator.

**Fabrication and Installation:** The carousel fabricator will be responsible to build
and install the carousel. The artist and architect will advise on the fabrication,
review test samples and the fabrication progress.

It is my opinion that the Artist Orientation Outline sets out a framework of terms and or

requirements that the Artist should expect to be present in the contract between the artist and the

client the Battery Conservancy and that the artist could reasonably expect if selected in the

competition to participate as a member of the design team to effectuate her proposal subject to

4

various approval steps to be set forth in a contract to be more fully negotiated between the artist and the Conservancy following the artist selection.

10. There is a reference to a budget and certain fees in the Artist Orientation Outline. Understandably budgets are often tentative and subject to change based on the ability of the commissioning body to raise the money unless it is a percent for art project, in which case the budget is a legislated percent of the capital expenditures on the project for the arts budget. In government percent based public art projects there is often an artist's fee established as a budget line item as a percent of the total commission. In other cases, an Artist may be a contracted for a fixed sum (without separating out the Artist's fee) to create a specific proposed work of art. In such cases the market value of the Artist's work is usually well established and the commissioning body confirms through comparable sales or commissions that the proposed work of art's market value is equal to or exceeds the commission amount. When a commission includes a separate artist's fee, the artist's fee can vary based upon the size and complexity of the project, but in many public projects the standard fee proposed by the commissioning body is 20% of the allocated art fabrication budget or art construction budget subject to the artist's working drawings. There are many exceptions to this standard, for example an artist may only be required to do a few drawings that are subsequently developed into a final work of art by others, in such cases the artist's fee could be negotiated. In other instances the artist may spend months or even years of personnel and studio time creating a work of art. Fees for such work are also often negotiated based on a number of variables.

11. I have also been asked to opine on the possible harm and injury to an artist who is wrongfully terminated from a project so highly visible as the Sea Glass Carousel in Battery Park.

The reason that the Model Contract and the General Services Administration Art In Architecture contract ("GSA Contract"), which was used by my former agency, provide a detailed structure for review is to assure that no artist is removed from a project at the whim of a single individual or for other arbitrary and capricious reasons. These contracts and other public art contracts typically, establish fair procedures for review and approval of the artist's work, so that no artist is wrongfully terminated from a project. If termination for cause is alleged, the artist is notified in writing of the specific faults, given an opportunity to offer remedies or correct the faults, or under certain circumstances, to appeal the determination of fault.

12. I have also been asked to opine on the potential irreparable injury suffered by an artist who is wrongfully terminated. Following common due diligence procedures, a public art administrator will research an artist's project performance history. If an artist has been terminated from a previous project, there may often be a "ripple effect" and the likelihood of additional projects is diminished. More than half of the public art commissions are selected by panels who will review an artist's past background and be aware of an artist's projects as well as an artist's removal for fault from any projects. Notwithstanding that an artist may continue to have a successful selling career through a gallery, the harm to an artist to obtain public art commissions based on accusations of fault or default cannot be quantified in money damages alone.

13. I understand that the Plaintiff has argued, and I agree, that a defendant's action in terminating an artist from a contract will have a real but incalculable effect on an artist's status and ability to compete for private and public art commissions. Based on my experience, it is my opinion that such damages may not be calculated over the reasonable life of a contract with relative certainty.

6

14. I have spent a career dedicated to the belief that the creation of public art is a product of meaningful and vital collaboration between artists and public decision-makers. In my experience, such collaborations only work to the public's benefit when there is an open exchange of ideas, means and methods between the artist and the decision makers. Without such a collaboration and the mutual respect it should engender the creative process often stumbles, sometimes fails. Public decision-makers will continue, as they have historically, to embrace art that elevates and refreshes the common moment of experience with a kernel of awe and wonder — some small magic that transforms the everyday eye, mind and object through the efforts and vision of another. The artist's vision that performs this function will be embraced by the public and receive encore, after encore — we must work for this outcome, above all else we must care, trust and respect.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on May 8, 2008
in New York, New York.

DALE MARTIN LANZONE

7