II.  **A Preliminary Injunction Is Warranted On the Claim for Submission and Misappropriation of Ideas.**

   A.  **The Merits.**

In *Nadel v. Play by Play Toys and Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000), the Second Circuit summarized the New York law of submission and misappropriation of ideas.

> Our analysis begins with the New York Court of Appeals' most recent discussion of the law governing idea submission cases. *Apfel v. Prudential-Bache Securities, Inc.*, 81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E2d 1095 (1993). In *Apfel*, the Court of Appeals discussed the type of novelty an idea must have in order to sustain a contract-based or property-based claim for its uncompensated use. Specifically, *Apfel* clarified an important distinction between the requirement of "novelty to the buyer" for contract claims, on the one hand, and "originality" (or novelty generally) for misappropriation claims, on the other hand.
>
> The Apfel court explicitly discussed the pre-disclosure contract scenario present in the instant case, where "the buyer and seller contract for disclosure of the idea with payment based on use, but no separate postdisclosure contract for the use of the idea has been made." See *Apfel*, 81 N.Y.2d at -I77-78.
>
> While an idea may be unoriginal non-novel in a general sense, it may have substantial value to a particular buyer who is unaware of it and therefore willing to enter into contract to acquire and exploit it. See *Apfel*, 81 N.Y.2d at 475-76.

Plaintiff claims that she is likely to succeed on the merits of her "implied in contract" or express contract claim against the Defendants.

A review of the Conservancy website exhibits attached to the several Broughel Declarations, including her Proposal, and the Declaration of Theodore Berger, show beyond peradventure that Defendants have incorporated Plaintiff's novel ideas as expressed in her proposal, including the fiber optic lighting from within of the resin figures, without credit or compensation to Plaintiff.

Moreover, a comparison of the work of George Tsypin Opera Factory ("Tsypin") suggests that he was selected as a "producer of the ride," because the total concept and feel of his work approximates the novel and original ideas which Plaintiff introduced to the Defendants.

Enjoining the Defendants from entering into further contracts with Tsypin would prevent further irreparable harm to Plaintiff by the injury to her reputation and good will. Further, whether and the extent of the appropriation of her novel ideas is a fair ground for litigation. The New York Supreme Court in 1993 granted a preliminary injunction against a noted columnist who had entered into a highly compensated exclusive contract with the Daily News. The court stated,

> The essence of art is expression of ideas that are unique to the writer. It is this novelty of expression, the product of a creative mind, this embellishment of skeleton "ideas" that give rise to a writer's uniqueness. Defendant unquestionably possesses such ability, and his great ability has been so widely recognized as to give credence to the claim of uniqueness. Given the facts set forth in the moving papers, plaintiff has, prima facie, established that defendant is unique. (N.Y.L.J. Sept. 16 1993).

The public interest is not served by the actions of the Conservancy in depriving New York City of Plaintiff's vision.

### III. Plaintiff Will Suffer Irreparable Harm to Her Reputation and Career If Any Injunction Does Not Issue.

Plaintiff sets forth in her Declaration the harm to her reputation, good will and career if she is wrongfully terminated from the Project, a harm which will be exacerbated if Defendants are permitted to move forward with someone who works in her style and incorporates her novel ideas in the context of the fabrication of the interior of a carousel. Such ideas represent a radical departure from our common understanding of the traditional carousel and the experience of "bobbing up and down on wood horses," seeing only the "behind in front."

A clear showing that a product that a plaintiff has not yet marketed is a truly unique opportunity for a company." *Tom Doherty Assoc. v. Saban Entm't*, 60 F.3d 27, 38 (2d Cir. 1995). In the instant case, the Plaintiff has shown that the Sea Glass Carousel Project represents a sufficiently unique opportunity to warrant a finding of irreparable injury.

The Declaration of Patricia Kirshner submitted by the Defendants supports Plaintiff's claim for a preliminary injunction. First, contrary to Defendants' laches argument discussed in Section III, (A speculative loss could have caused immediate irreparable harm: news service ordered to continue its contractual relationship.) (*Reuters Limited v. UPS International* 903 F.2d 904 (2d Cir. 1990)

IV.     **Local Law 65 (1982) Requires That A Preliminary Injunction Be Granted.**

   A.   **The Selection of Tsypin Was Made In Violation of The Requirements of Local Law 65.**

Tsypin has not entered into a further agreement but has completed only a schematic design phase.

On May 19, 2007, Defendants will seek approval of Tsypin's schematic proposal from the Arts Commission using Plaintiff's novel designs and ideas.

At the time Plaintiff was selected as an artist to participate on a design team and design the interior of the carousel, the Sea Glass Carousel, the Battery was financed by private funds. The Court is respectfully requested to take judicial notice of the fact that Sea Glass now involves 8 million dollars of New York City funds. Attached to the Declaration of Barbara Hoffman is Local Law 65 and the implementing regulations. It is submitted that the Percent for Art Ordinance applies.

The Conservancy has failed to act with the transparency and in accordance with the duly enacted laws and ordinances of the City of New York, including the Percent for Art Ordinance.

Assuming arguendo, Plaintiff is not entitled to be reinstated to finish the interior of Sea Glass, the procedures required by Local Law 65 should be followed.

Therefore, the Court should enjoin Defendants from entering into any contracts or engaging in any proceedings before Governmental bodies in what is a brazen act of circumvention of New York's artist selection procedures for public art projects.

In considering whether Plaintiff is entitled to equitable relief, Plaintiff stresses equity's traditional role in fashioning a remedy appropriate to the case before, it. Plaintiff asks this Court to exercise its ingenuity to find the resolution which is most just even though no precedent on the precise question is ascertainable. *See ABC v. Warner Wolf, et al.*, 76 A.D.2d 162; 430 N.Y.S.2d 275 (1st Dept. 1980).

V.    **Plaintiff's Breach of Contract Claim.**

    A.    **Plaintiff's Contract Or Implied In Fact Contract.**

A contract may be implied in fact from the presumed intention of the parties as indicated by their conduct, e.g. *Nadel. supra.*

Plaintiff has alleged that the Artist Orientation Outline set forth a framework for the terms of the contract. In accepting the Commission, Plaintiff relied on these representations.

The parties' further intent is expressed in the "Acceptance Letter" of Ms. Price to Plaintiff which speaks about entering into contracts in further phases until the completion of the Project. As an accommodation to the Conservancy, Plaintiff entered into the first phase of the contract with Defendants Weisz + Yoes. A review of the AIA contract shows that Weisz + Yoes

acted on behalf of the Defendant Conservancy. When Weisz + Yoes terminated Plaintiff, she continued to work and Defendant Battery Conservancy entered into an interim agreement for the redoing of the failed prototype with the intention that a Phase II contract would be forthcoming.

Plaintiff claims that the reason for the failure was that Weisz + Yoes breached the Artist Orientation Outline and the covenant of good faith fair dealing by preventing her from working with the fabricator as required by the Artist Orientation outline and by refusing to let her collaborate as a member of the design team as set forth in her scope of services in the Artist Orientation Handbook.

Plaintiff submits that she has met the requirement of a likelihood of the success of the merits of her breach of contract or implied contract claim. Alternatively, Plaintiff has raised sufficiently serious questions going to the merits of her claim to make them a fair ground for litigation, and she respectfully submits the balance of hardships tip in her favor as described in VI.

Although Defendants claim that they will suffer potential loss of funds if the injunction is granted, the public will suffer if the Conservancy is permitted to act in the lawless manner it has. Plaintiff does not dispute that the Conservancy has excelled at raising money. Such fact, however, has blinded the City bureaucracy to its flaws. This Court should not be so blinded.

Plaintiff worked for three years without pay while the Conservancy raised money, based on her novel ideas and copyrighted deigns. Plaintiff was asked to donate and did donate more than forty thousand dollars in pro bono services not within her scope of services, on the representation and in reasonable reliance that she would complete the Project from which she has been arbitrarily and without justification terminated.

She categorically denies in her Declaration that she has been responsible for delays and failed to produce models. Plaintiff believes the balance of hardships tips in her favor.

A covenant of good faith and fair dealing is implied in every contract governed by New York law. *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir. 1989) (citing *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980). That covenant precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement. Id. This describes exactly what has occurred here in that defendant has clearly not dealt fairly with the plaintiff and has not acted in good faith. Defendants failed to cooperate with Plaintiff, including not providing specifications for the Carousel mechanism as required by the Artist Orientation Package and cannot now be permitted to preclude Plaintiff's right to compensation under the contract or to terminate Plaintiff for non-performance. *NUS v. Blue Circle, Inc.* 793 F.Supp. 52 (N.D.N.Y. 1992).

If as Defendants argue specific performance cannot ultimately be granted to Plaintiff on her breach of contract claim, a proposition with which Plaintiff disagrees, in the interim at this stage, there is ample precedent to enjoin the Conservancy from entering into contracts with others who will pirate her ideas and expression, as noted in the Preliminary Statement.

    **B.**    **Specific Performance as an Equitable Remedy.**

Although Plaintiff does not contest the proposition that equity will generally not enforce by specific performance, contracts for personal services, Plaintiff argues that a commission which is awarded to an artist through professional selection procedures for her unique vision is a sui generis contract. Implicit in the award of the commission is the understanding that the artist will be allowed to complete the commission absent express contract

provisions providing the circumstances which may give rise to termination. (See Model Contract, Lanzone Decl.) Therefore, unless cause is proven, the artist has a contractual right implicit from the award of the commission and her acceptance of it to complete the commission. The Artist is an independent contractor commissioned to provide a unique artist vision to the public, not an at will employee as Defendants suggest.

Thus, the facts of this case are distinguishable from the cases refusing to compel an artist to honor a personal service contract or the refusal of equity to compel that an employee be retained by an employer.

The fact that specific performance as an ultimate remedy is justified if Defendants are in breach of their contract, is all the more reason why this Court should restrain the Defendants from contracting which Tsypin since the fact that a party may breach its obligation to a third party should not excuse this remedy.

### C. Irreparable Harm and Uniqueness.

In the case of *Tom Doherty, et al.*, *Doherty* brought an action for breach of contract and moved for a preliminary injunction. He contended that an injunction was required because the right to publish a certain book presented a unique opportunity for it to establish itself as a major player in the children's book publishing industry. The district court found that Doherty demonstrated he would suffer irreparable harm unless the company who owned the rights to the book was ordered to license to it publishing rights.

### VI. The Public Interest Decidedly Favors Plaintiff.

New York has determined that art and artists are an essential part of the City's cultural fabric. Both the state and city have enacted legislation protective of artists.[1] It is the legislated

---

[1] NYCLS Art & Cult. Affr. (2008); in particular NYCLS Art & Cult. Affr. @ Article 12-14 (2008); Local Law 65 Percent for Art.

policy of this state as expressed in New York's Artist Authorship Rights Act to protect from injury the reputation and moral rights of an artist.

Plaintiff has argued that the law is not preempted. However, regardless of whether or not it is preempted from application in this case, the policy expressed therein which provides for both injunctive relief and damages to protect an artist's reputation from injury is the policy of the State of New York and an expression of the will of the public and in the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that her motion for a preliminary injunction be granted.

Dated: New York, New York
       May 9, 2008

Respectfully submitted,

By: _____
Barbara Hoffman, Esq. (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200

*Attorney for Plaintiff Barbara Broughel*

16