# LOCAL LAWS

## OF

## THE CITY OF NEW YORK

### FOR THE YEAR 1982

#### No. 65

Introduced by Council Member Sadowsky (by request of the Mayor) and Council Members Dryfoos, Greitzer and Stern; also Council Members Messinger, Michels and Wallace—

## A LOCAL LAW

To amend the New York City Charter, in relation to providing for works of art in public buildings.

Be it enacted by the Council as follows:

Section 1. Chapter nine of the New York city charter is amended by adding a new section two hundred thirty-four, to read as follows:

§ 234. Works of art. a. As used in this section the term "works of art" includes all forms of the visual arts conceived in any medium, material or combination thereof.

b. Works of art shall be provided for each capital project which involves the construction or the substantial reconstruction of a city-owned public building or structure the intended use of which requires that it be accessible to the public generally, or to members of the public participating in, requiring or receiving programs, services or benefits provided thereat. For the purposes of this section, a police precinct house and a firehouse shall be deemed to be such buildings.

c. An amount not less than one per cent of the first twenty million dollars and one-half of one per cent of any amount in excess of twenty million dollars of capital funds appropriated by the city for each such capital project, other than funds appropriated for the acquisition of real property, shall be allocated for works of art provided, however, that this section shall in no case require the expenditure of more than four hundred thousand dollars for works of art for any capital project; nor more than the sum of one and one-half million dollars for works of art in any fiscal year. The mayor

2

may exempt a capital project from the provisions of this section if in his sole judgment the inclusion of works of art as provided hereby would be inappropriate.

d. Reasonable advance notification of the intention to include works of art in a project shall be provided to the appropriate district council member, council-members-at-large, borough president and chairperson of the community board of the district in which the project is located. All such works of art shall be subject to the approval of the art commission pursuant to section eight hundred fifty-four of this charter.

e. The mayor shall adopt rules and regulations to implement the provisions of this section.

§ 2. This local law shall take effect immediately and shall apply to any capital project for which the scope of project is submitted for approval on or after January first, nineteen hundred eighty-two.

THE CITY OF NEW YORK, OFFICE OF THE CITY CLERK, S. S.:

I hereby certify that the foregoing is a true copy of a local law of The City of New York, passed by the Council on October 14, 1982, and approved by the Mayor on October 29, 1982.

DAVID N. DINKINS, City Clerk, Clerk of the Council.

CERTIFICATION PURSUANT TO MUNICIPAL HOME RULE LAW SECTION 27

Pursuant to the provisions of Municipal Home Rule Law Section 27, I hereby certify that the enclosed local law (Local Law 65 of 1982, Council Int. 1093-A) contains the correct text and:

Received the following vote at the meeting of the New York City Council on October 14, 1982:

29 FOR      7 AGAINST      1 NOT VOTING

Was approved by the Mayor on October 29, 1982.
Was returned to the City Clerk on October 29, 1982.

FREDERICK A. O. SCHWARZ, JR., Corporation Counsel.

OFFICE OF THE MAYOR

Notice of Adoption of Regulations
for the Implementation of Chapter 9, Section 234
of the Charter -- Percent for Art Law

NOTICE IS HEREBY GIVEN THAT, due and proper publication in the City Record having been made pursuant to Section 1105 of the New York City Charter and an opportunity for comment having been duly afforded, and exercising the authority vested in me as Mayor of the City of New York, Regulations for the implementation of Chapter 9, Section 234 of said Charter are hereby adopted, and read in full as follows:

REGULATIONS FOR THE IMPLEMENTATION OF
CHAPTER 9, SECTION 234 OF THE NEW YORK CITY CHARTER --
PERCENT FOR ART LAW

Section 234.10  **Purpose**

A. The purpose of chapter 9, section 234 of the charter, commonly referred to as the Percent for Art Law, and these regulations, is to ensure that a percentage of the capital budget appropriated for the construction or substantial reconstruction of certain city-owned public buildings or structures shall be allocated for the inclusion of works of art on or around the exterior of such buildings or structures, or in the interior areas where the public has general access. Further, it is the intention of this legislation to assure that public works are undertaken with the full recognition of the aesthetic impact they have on the surrounding community, that they are designed to enhance the neighborhood in which they are located, that they bring pride to our citizens, and that they celebrate and encourage the arts, the creative talent of living artists and the existing art treasures that make New York City the world's cultural capital.

B. These regulations implement section 234 of the charter as part of the project initiation and implementation process contained in chapter 9 of the charter.

Section 234.11  **Applicability**

These regulations apply to projects listed in the city's capital budget and include each line project and each project of a multi-project effort generally described in a lump sum budget line. Individual projects including multi-year projects, which are part of a major improvement program or betterment at a specific site may be subject to these rules as set forth below.

Section 234.12  <u>Definitions</u>

    A.  "Art Allocation": The dollar amount of the budget of an Eligible Project available for expenditure for Works of Art, calculated as follows:

        a) Not less than 1% of the first twenty million dollars ($20,000,000) of capital funds appropriated in the city capital budget for an Eligible Project, not including funds appropriated for the acquisition of real property; plus,

        b) Not less than 1/2 of 1% of the capital funds in excess of the first twenty million dollars ($20,000,000) appropriated in the city capital budget for such Eligible Project, not including funds appropriated for the acquisition of real property;

<u>provided, however</u>, that such allocation will be recalculated if changes in the project scope prior to the selection of Works of Arts result in a change of 15% or more of the capital funds originally appropriated in the city capital budget for such Eligible Project; and <u>provided further, however</u>, that in no case shall section 234 of the charter require the expenditure of more than four hundred thousand dollars ($400,000) for Works of Art for any one Eligible Project, nor more than one and one-half million dollars ($1,500,000) for Works of Art in any one fiscal year. This allocation may be used for, but is not limited to, the acquisition of existing Works of Art, the commissioning and acquisition of new Works of Art, the restoring or refurbishing of existing Works of Art, the removal of Works of Art to an Eligible Project from another site, and/or the installation of Works of Art at the site of an Eligible Project.

    B.  "Art Commission": The body created pursuant to chapter 37 of the charter.

    C.  "Architect": The professional, whether a city employee, or a consultant, responsible for the design of an Eligible Project.

    D.  "Agency": A city, county, borough, or other office, position, administration, department, division, bureau, board or commission, or a corporation, institution or agency of government, the expenses of which are paid in whole or in part from the city treasury.

    E.  "Commissioner": The Commissioner of the Department of Cultural Affairs.

    F.  "Design Agency": The city Agency responsible for the preparation of the design of a project.

G. "Director": The Director of the Mayor's Office of Construction or its successor.

H. "Eligible Project": A capital project for which capital funds are appropriated by the city, and which involves the construction or Substantial Reconstruction of a city-owned building or structure, the intended use of which requires that it be accessible to the public generally or to members of the public participating in, requiring or receiving programs, services or benefits provided thereat. Buildings or structures within this category include, but shall not be limited to, office buildings, buildings designed for recreational purposes, police precinct houses, fire houses, schools, prisons and detention centers, hospitals and clinics, passenger terminals, shelters, libraries, community centers and court buildings.

I. "Panel": An advisory panel as provided in Section 234.13 hereof.

J. "Substantial Reconstruction": A capital project in which at least two of the major systems (electrical, HVAC (heating, ventilating and air conditioning), or plumbing) of a building are replaced and general construction work, including but not limited to new flooring, ceilings, partitions, windows, affects at least 80% of the building's floor area.

K. "Work(s) of Art": All forms of visual arts conceived in any medium, material or combination thereof.

Section 234.13  Panel

   A. Membership and Organization

      1. For each Eligible Project, the Commissioner will convene a panel consisting of:

         a. the Commissioner or his/her designee;

         b. one representative of the city Agency having jurisdiction over the Eligible Project upon its completion, if other than the Department of Cultural Affairs (such representative shall not be the Architect);

         c. one representative of the Design Agency, if other than (b) above (such representative shall not be the Architect); and,

         d. three representatives of the public, generally recognized as knowledgeable in the field of public art, and selected by the Commissioner, at least one of whom shall reside in or maintain a place of business in the borough in which the project is located. If the Department of Cultural Affairs is the Agency referred to in both (b) and (c) above, then four such representatives of the public, selected by the Commissioner.

3

2. Each member shall have one vote; except, in the event of a tie vote by the members, the Chairperson shall have two votes.

3. A majority of the votes eligible to be cast shall constitute a quorum to do business. Any action taken by the Panel shall require the assent of a majority of the votes present.

4. One representative of the Art Commission and one representative of the Director will be non-voting _ex officio_ members of each Panel and will not be counted as part of the quorum.

5. The Commissioner or his/her designee shall serve as Chairperson of the Panel.

6. The Chairperson may invite other knowledgeable persons to address the Panel but they shall not have a vote.

B. Duties of the Panel

1. Upon reviewing the scope of each Eligible Project and any reports, comments or recommendations of the Architect and the Agencies involved in its construction, after due deliberation, and following full consultation with the Architect, the Panel shall inform the Design Agency in writing of its recommendations as follows:

   a. the nature of Work(s) of Art to be considered for the Eligible Project;

   b. if new Work(s) of Art are to be commissioned, then the names of artists to be considered to create the Work(s) of Art or the manner to be used to select an artist, as through a competition, for example;

   c. if Work(s) of Art already in existence are to be used, then specific art works or works of suggested artists shall be recommended;

   d. other suggestions for the use of the Art Allocation, such as refurbishing or restoring existing Work(s) of Art located at the site or to be relocated to the site.

4

Section 234.14 Procedures

A. Upon the initiation of design of an Eligible Project in accordance with section 228(b) of the charter, the Design Agency shall notify the Commissioner in writing of the following:

   a) scope of the project;

   b) budget for the project;

   c) time schedule for the project; and,

   d) the Architect's name and address.

B. The duties of the Panel shall be performed as part of the Eligible Project's design phase but, in no event shall they interfere with the project's schedule.

C. Panels shall be convened by the Commissioner in consultation with the Design Agency, so as to expeditiously process Eligible Projects.

D. The Commissioner will keep a list of the Eligible Projects submitted, will establish a schedule for their consideration by a Panel, will appoint the three (or four, if required hereby) Panel members to each Panel representing the public, will notify all members of the time and place of each Panel meeting, and prior to each such meeting will distribute materials for consideration. If necessary, a Panel may be scheduled to convene more than once during its review of an Eligible Project, as for example, to visit the site of the Eligible Project, or to have additional opportunities to confer with the Architect and/or Design Agency.

E. The Commissioner will give reasonable advance notification of the intention to include Works of Art in an Eligible Project to the appropriate district council members, borough president and chairperson of the community board of the district in which the project is located, in writing, at the time the Panel to consider such project is appointed. The notification shall include the time and place of such Panel meeting(s).

F. Submissions to a Panel shall be made through the Commissioner by the Design Agency. The contract or agreement with the Architect (if the Architect is a consultant to the Design Agency) will provide that the Architect will consult with, and cooperate with, the Panel, in carrying out the requirements of section 234 of the charter, and will prepare all other necessary data, drawings and plans to be presented to and considered by the Panel.

5

G. Not later than ten (10) business days prior to the first date a Panel is scheduled to convene to consider an Eligible Project, the Design Agency, in consultation with the Architect, shall submit a statement, in writing, to the Commissioner, which shall include:

1. description and scope of the Eligible Project;

2. the amount of the Art Allocation;

3. suggestions as to the nature and types of Works of Art to be included in the Eligible Project and to be paid out of the Art Allocation; and,

4. suggested Works of Art already existing to be acquired and/or suggested artists to execute the Works of Art.

H. The Commissioner shall distribute the statement to the members of the Panel prior to the meeting.

I. At the Panel meeting(s), the Architect will be present to discuss the Eligible Project with the Panel members and respond to questions and comments. Following full discussion and upon a majority vote, the Panel will render its recommendations, including specific recommendations regarding Work(s) of Art and artists. For any Eligible Project the Architect may request and the Panel may recommend that the Art Allocation be spent on restoring or refurbishing existing Work(s) of Art for the site; or the removal of Works of Art to the Eligible Project from another site; <u>or any other alternative recommendations for the use of the Art Allocation.</u>

J. Within two weeks after the Panel's final meeting, the Commissioner will forward the Panel's written recommendations, in accordance with subsection 234.13(B)(1) above, to the Design Agency to be used in the Architect's preparation of initial designs for the Eligible Project, with copies to the members of the Panel and to those persons referred to in subsection 234.14(E) above.

Section 234.15 <u>Eligibility; Exemptions</u>

A. In the scope of each capital project, the Design Agency shall specifically state, either, that:

1. the project is an Eligible Project as defined in section 234 of the charter; or

2. the project is not an Eligible Project.

B. The Mayor may exempt capital projects from the provisions of section 234 of the charter if in his sole judgement the inclusion of Works of Art as provided thereby would be inappropriate.

C. If any city Agency takes issue with the finding that a project is or is not an Eligible Project, the matter shall be referred to the Director, whose decision will be final.

Section 234.16 Project Eligibility Monitoring

A. Each capital budget request form ("CB Form III") submitted to the Office of Management and Budget ("OMB") shall have indicated thereon that such project either is or is not an Eligible Project, or that at such stage of planning, eligibility cannot yet be determined.

B. OMB shall submit a set of all CB Form III's received by it to the Commissioner for the purpose of monitoring and determining capital projects that come within section 234 of the charter.

Section 234.17 Art Commission; Removal or Alteration of Works of Art

A. The procedures set forth herein are in addition to and not in lieu of the procedures of the Art Commission pursuant to section 854 of the charter.

B. Works of Art acquired pursuant to section 234 of the charter shall not be, without the prior written approval of the Art Commission,

(i) sold or otherwise alienated or disposed of; or

(ii) altered, modified in any way or relocated.

Section 234.18 Implementation

A. Following receipt of the Panel's recommendations, the Design Agency shall make its final decision concerning the Work(s) of Art to be included in the Eligible Project. If the Design Agency's decision differs from the Panel's recommendations, the Design Agency shall promptly, and within the design phase, provide a written explanation for its decision to the Commissioner, who shall forward copies of such explanation to members of the Panel and to the persons referred to in subsection 234.14(E) above.

B. It is the intent of section 234 of the charter that the Works of Art be an integral part of and compatible with the project being constructed. Hence, the procedures called for in these regulations are meant to commence at the earliest stages of project design to assure that the project construction schedule has incorporated into it the schedule to be followed for the creation, acquisition or restoration of the Works of Art to be included therein.

C. The Commissioner shall administer the implementation of section 234 of the charter and shall offer guidance, assistance and advice, throughout the pre- and post- Panel process, to the Agencies involved with Eligible Projects, the Architect, the artist(s) and/or the community.

## EXPLANATION OF REGULATIONS

These regulations will implement chapter 9, section 234 of the charter, commonly referred to as the Percent for Art Law, passed by the City Council on October 14, 1982, and approved by the Mayor on October 29, 1982. They establish a procedure whereby city capital projects that come within the purview of section 234 of the charter will be reviewed, in consultation with the project's architect, by a panel composed of representatives of the public generally recognized as knowledgeable in the field of public art, and the city agencies involved with the project. The purpose of the panel's review is to make recommendations to the city agency responsible for the design of such project as to the type and nature of works of art to be included in the project. These regulations are in addition to and not in lieu of the procedures of the Art Commission pursuant to section 854 of the charter.

FILED WITH CITY CLERK: August 10, 1983

EFFECTIVE DATE: September 15, 1983

_[signature]_
EDWARD I. KOCH
Mayor

8

```
 1    of project within sixty days.  A scope of project approved by the
 2    mayor shall be effective thirty days after it has been acted upon
 3    by the mayor if no petition for review is made to the board of
 4    estimate within the specified time period.]
 5        c.  During the review of the selection of a site of a capital
 6    project pursuant to the uniform land use review procedure
 7    established by section one hundred ninety-seven-c, the community
 8    board and borough president shall also review, and may comment on,
 9    the scope of the project.
10        d.  No scope of project shall be approved by the mayor unless
11    (1) it contains the information required by paragraph four of
12    section two hundred ten and it conforms to the applicable standards
13    for the type of project adopted pursuant to this chapter, and (2)
14    funds are available within the appropriate program category of the
15    capital program that can be reserved for each fiscal year required
16    to complete the project.
17        Sec. [233.]223.  Design of capital project.  The proposed design
18    and final design for a capital project shall be made available for
19    review to the respective council committee, borough president and
20    the community board for the community district in which the project
21    is to be located.  The mayor or his representative shall review the
22    final design to determine its conformance with the approved scope
23    of project pursuant to this chapter.  [Within thirty days after
24    receipt of the final design, the borough president or community
25    board may petition to have it reviewed by the board of estimate to
26    determine only if the final design violates the scope of project
27    or creates excessive costs.  The board of estimate shall have
28    thirty days within which to approve or disapprove the final design.
29    If no petition for review is made to the board of estimate, and no
30    objections are received by the mayor within the thirty day period,
31    the final design shall be effective.]
32        Sec. [234.]224.  Works of art.  a.  As used in this section the
33    term "works of art" includes all forms of the visual and
```

performing arts conceived in any medium, material or combination thereof.

b. Works of art shall be provided for each capital project which involves the construction or the substantial reconstruction of a city-owned public building or structure the intended use of which requires that it be accessible to the public generally or to members of the public participating in, requiring or receiving programs, services or benefits provided thereat. For the purposes of this section a police precinct house and a firehouse shall be deemed to be such buildings.

c. An amount not less than one per cent of the first twenty million dollars and one-half of one per cent of any amount in excess of twenty million dollars of capital funds appropriated by the city for each such capital project, other than funds appropriated for the acquisition of real property, shall be allocated for works of art; provided, however, that this section shall in no case require the expenditure of more than four hundred thousand dollars for works of art for any capital project; nor more than the sum of one and one-half million dollars for works of art in any fiscal year. The mayor may exempt a capital project from the provisions of this section if in his sole judgment the inclusion of works of art as provided hereby would be inappropriate.

d. Reasonable advance notification of the intention to include works of art in a project shall be provided to the appropriate [district] council member, [council-members-at-large,] borough president and chairperson of the community board of the community district in which the project is located. All such works of art shall be subject to the approval of the art commission pursuant to section eight hundred fifty-four.

e. The mayor shall adopt rules and regulations to implement the provisions of this section.

New York City Charter

Capital Projects and Budget                                    § 224

§ 224. Works of art. a. As used in this section the term "works of art" includes all forms of the visual and performing arts conceived in any medium, material or combination thereof.

b. Works of art shall be provided for each capital project which involves the construction or the substantial reconstruction of a city-owned public building or structure the intended use of which requires that it be accessible to the public generally or to members of the public participating in, requiring or receiving programs, services or benefits provided thereat. For the purposes of this section a police precinct house and a firehouse shall be deemed to be such buildings.

c. An amount not less than one per cent of the first twenty million dollars and one-half of one per cent of any amount in excess of twenty million dollars of capital funds appropriated by the city for each such capital project, other than funds appropriated for the acquisition of real property, shall be allocated for works of art; provided, however, that this section shall in no case require the expenditure of more than four hundred thousand dollars for works of art for any capital project; nor more than the sum of one and one-half million dollars for works of art in any fiscal year. The mayor may exempt a capital project from the provisions of this section if in his sole judgment the inclusion of works of art as provided hereby would be inappropriate.

d. Reasonable advance notification of the intention to include works of art in a project shall be provided to the appropriate council member, borough president and chairperson of the community board of the community district in which the project is located. All such works of art shall be subject to the approval of the art commission pursuant to section eight hundred fifty-four* of this charter.

e. The mayor shall adopt rules and regulations to implement the provisions of this section.

HISTORICAL NOTE

Added by L. L. 1982, No. 65.
Subd a amended at General Election, November 8, 1988.
Section renumbered, subd. c, d amended at General Election, November 7, 1989 (formerly § 234).

* The term "work of art" was redefined in this section, portions included in "Structures."